## Indiana Union Traction Company *v.* Heller.

[No. 6,680.   Filed October 15, 1909.]

1.  Action.—*Purpose of.*—*Justice.*—The sole purpose of an action
at law is to have justice administered.  p. 387.
2.  Courts.— *Supreme.*— *Appellate.*—Rules of appellate procedure
adopted by the Supreme Court are binding upon the Appellate
Court (§1419 Burns 1908, Acts 1891, p. 39, §15).  p. 387.
3.  Courts.— *Rules.*— *Formalism.*— *Constitutional Law.*— Rules of
procedure can be made and enforced only as incidents in estab-
lishing justice, and if they tend to obscure, delay or hinder the
attainment of justice, they constitute an evasion of the Constitu-
tion and a subversion of justice.  p. 387.
4.  Appeal.—*Supreme and Appellate Court Rules.*— *Briefs.*— The
rules of the Supreme and Appellate Courts are sufficiently liberal
to allow the Appellate Court to consider a brief, where it advises
the Court as to the questions involved in the appeal.  p. 388.

5. PLEADING.—*Complaint.—Interurban Railroads.—Failure to Stop to Receive Passengers.—Tort.*—A complaint alleging that defendant interurban railroad company negligently, carelessly, wilfully and knowingly ran its car past the plaintiff who was desirous of taking passage thereon, by reason of which he was compelled to walk all night, to his damage, states an action in tort. p. 388.

6. CONTRACTS.— *Breach of.— Damages.— Railroads.*—The measure of damages in case of a breach of contract must ordinarily be confined to the direct results of such breach. p. 389.

7. INTERURBAN RAILROADS.—*Failure to Stop for Passenger.—Damages.—Excessive.*—Where a complaint alleged that the defendant interurban railroad company wilfully refused to stop and allow the plaintiff to take passage, and that by reason thereof the plaintiff was compelled to walk all night, making him sick, a judgment for $100 is not excessive. p. 389.

From Marion Circuit Court (14,360); *Henry Clay Allen,* Judge.

Action by Henry Heller against the Indiana Union Traction Company. From a judgment on a verdict for plaintiff for $100, defendant appeals. *Affirmed.*

*J. A. Van Osdal, W. A. Kittinger* and *J. R. Morgan,* for appellant.

*John M. Bailey,* for appellee.

ROBY, P. J.—Appellee, with ten other persons having tickets which entitled them to transportation, went upon a platform, provided for the purpose, with the intention of taking passage upon one of appellant's cars, which was scheduled to make a "flag stop" at said place. The time was about midnight. The car approached rapidly, was signaled and stopped, but overran the platform from one hundred fifty to two hundred feet. The conductor, standing on the rear platform, almost immediately gave the signal to go ahead, and the car proceeded on its way without returning to the platform, or otherwise giving the appellee an opportunity to board it. Appellant does not dispute its liability, but addresses itself in this court to the amount of damages awarded, which was $100.

Appellee's first point is that appellant's brief should not be considered, because of noncompliance with section five of rule twenty-two, requiring a concise statement of so much · of the record as is necessary to present the error complained of.

The Constitution of Indiana recites, among other things, that it is adopted "to the end that justice be established." Constitution, 1851, Preamble. The highest conception of justice has to do only with verities. The Searcher of human hearts could not be imagined as hampered by forms. Human justice is, of necessity, subject to human limitation, but society demands that the courts shall, in their procedure and judgments, approximate toward the ideal, and do justice to its members according to their deserts, exhausting all reasonable means to ascertain what that truth is, and rejecting whatever obscures it. The rules of the Supreme Court, which are by statute made obligatory upon this court (§1419 Burns 1908, Acts 1891, p. 39, §15), are designed to advance justice, and not to defeat it. They could lawfully be made to no other end, for to do so would be but an indirect method of doing that which if done directly would be maladministration of office. These rules indicate an orderly and uniform method of presenting the conflicting claims of litigants. That they should be observed, goes without saying. The only difficulties connected with their observance have had to do with the interpretation given to, and placed upon them by the bar and the courts. The conclusions reached by the courts are quickly adopted by the bar, when it learns them. Those considerations before mentioned, which apply to the making of rules, apply with equal force to their interpretation and application. If a rule shall ever be interpreted or applied to the end that truth be obscured, such fact will be a public misfortune. By a rigid interpretation of these very reasonable rules, it would be possible to

preserve the form of judicial consideration and abandon the substance thereof in any given case wherein partiality or interest might operate. Such a state of affairs would be unendurable. It follows, therefore, that in determining whether the appellant's brief shall be rejected for noncompliance with said rule, an important consideration is the fact that if so rejected it will thereby be deprived of its appeal without any fault, but solely because of alleged literary shortcomings on the part of its representatives. A liberal construction must always be made to avoid such a result. Appellant's brief is sufficient to advise this court, without delay or difficulty, of the questions involved in this appeal and of the facts out of which such questions arose. It is therefore in exact accordance with the rule.

The complaint was in one paragraph. It alleged, in substance, the corporate character of the appellant, described the location and character of its lines of railway, and the points between which the same were operated, the manner of their operation, the acquaintance of appellee therewith, the transportation of appellee—with ten others on that occasion—from Oaklandon to Negley's crossing, and their subsequent return to that crossing for the purpose of being carried back to Oaklandon, and then alleges that the defendant and its servants neglected and refused to stop said car at said crossing, but negligently, wilfully and knowingly ran said car about two hundred feet past said station platform and crossing, at which point said car was stopped; that plaintiff, with said other passengers, started in a run down said track to board said car where it had stopped, but before plaintiff reached the car, or could board the same, the motorman and conductor of said car, negligently, carelessly, wilfully and knowingly caused said car to start at a rapid speed, and left said plaintiff, knowing that he was desirous of becoming a passenger on said car, and well knowing that to be the last car on which he could become a passenger to be transported to his said home during

that night; that by reason thereof he was compelled to walk home, which he did not reach until daylight the next morning, and was absent from his home and family during the night; that, by reason of said walk and the loss of sleep and the worry of mind, he was rendered weak, tired and sick, all to his damage in the sum of $500.   It is hard to be patient with such use of epithets as is made in this pleading.   It indicates a desire in some way to sue in tort instead of in contract, as appellee might have done.   *Coy* v. *Indianapolis Gas Co.* (1897), 146 Ind. 655, 36 L. R. A. 535; *Cincinnati, etc., R. Co.* v. *Eaton* (1884), 94 Ind. 474, 48 Am. Rep. 179; *Lake Erie, etc., R. Co.* v. *Acres* (1886), 108 Ind. 548.   Indiana courts have, in considering the question of damages, 6. laid much stress upon the form of the action, and in *Cincinnati, etc., R. Co.* v. *Eaton, supra,* Niblack, J., ascribes much of the apparent conflict in authority upon that subject to a failure to note the distinction.   The direct result of the wrongful act was that appellee was compelled to walk home, occupying the time from midnight Saturday night until about sunrise Sunday morning, and that he lost the price of his ticket, and, in the absence of other facts calculated to enhance damages (*Cincinnati, etc., R. Co.* v. *Eaton, supra,* at page 481), the amount of recovery, had his action been brought for breach of contract, would be limited to those items.   The deduction from the body of authority seems to be that exemplary damages will be permitted when 7. the breach of duty is charged against the carrier to have been maliciously or fraudulently done, or accompanied with violence or indignity, the wrongful act being, of course, one not punishable by the criminal law.   The jury were at liberty to find that the acts complained of were done intentionally and in a spirit of oppressive malice, and in that event the breach of duty would be one for which exemplary damages might be assessed.   *Jeffersonville R. Co.* v. *Rogers* (1871), 38 Ind. 116, 10 Am. Rep. 103; *Louisville, etc., R. Co.* v. *Goben* (1896), 15 Ind. App. 123; *Louisville, etc., R.*

*Co.* v. *Wolfe* (1891), 128 Ind. 347, 25 Am. St. 436. It is not necessary to the application of the doctrine that physical force be used. *Cleveland, etc., R. Co.* v. *Kinsley* (1901), 27 Ind. App. 135, 87 Am. St. 245. In view of these authorities, we are not able to say that the damages are excessive.

Affirmed.