340 N.E.2d 377 (1976)
HIBSCHMAN PONTIAC, INC., Appellant (Defendant below),
v.
James B. BATCHELOR, Appellee (Plaintiff below), General Motors Corporation, Appellee (Defendant below).
No. 3-1073A128.
Court of Appeals of Indiana, Third District.
January 30, 1976.
Rehearing Denied March 3, 1976.
*379 R. Wyatt Mick, Jr., Mishawaka, for appellant.
Edward A. Chapleau, Chapleau, Roper, McInerney & Farabaugh, South Bend, for appellee, James B. Batchelor.
John J. Lorber and Terry V. Lehr, Crumpacker, May, Levy & Searer, South Bend, for appellee, General Motors Corp.
STATON, Presiding Judge.
On October 26, 1970, Batchelor filed suit against Hibschman Pontiac, Inc. (seller) and General Motors Corporation (manufacturer) alleging breach of express warranties covering his new 1969 Pontiac GTO automobile. Batchelor additionally alleged that certain statements and acts of General Motors Corporation and Hibschman Pontiac, Inc. were "made or done wilfully, maliciously, and in wanton disregard of the rights of the plaintiff." In a trial by jury, Batchelor was awarded Fifteen Hundred Dollars ($1,500.00) compensatory damages against both Hibschman Pontiac, Inc. and General Motors Corporation and Fifteen Thousand Dollars ($15,000.00) punitive damages against Hibschman Pontiac, Inc. On appeal, Hibschman Pontiac, Inc. contends that the punitive damages award is improper because Batchelor's suit is basically a contract action. Batchelor, however, argues that punitive damages are permitted in contract actions when there is a showing of malice, fraud or wanton disregard of the plaintiff's rights. In the alternative, Batchelor contends that punitive damages are proper in this case because there has been a showing of conduct amounting to an independent tort, i.e. fraud. We hold that punitive damages are improper in a breach of contract action and that there is no evidence of independent tortious conduct on the part of Hibschman Pontiac, Inc. supporting the punitive damages award. We reverse.

I.

Punitive Damages in a Contract Action
Indiana follows the traditional rule that punitive damages are not recoverable in a breach of contract action. Standard Land Corp. v. Bogardus (1972), Ind. App., 289 N.E.2d 803; Voelkel v. Berry (1966), 139 Ind. App. 267, 218 N.E.2d 924; Murphy Auto Sales, Inc. v. Coomer (1953), 123 Ind. App. 709, 112 N.E.2d 589. See also J. Calamari & J. Perillo, Law of Contracts § 204, at 327 (1970); 5 A. Corbin, Corbin on Contracts § 1077, at 437 (1964), C. McCormick, Law of Damages § 81, at 290 (1935); Restatement of Contracts § 342 (1932).[1]
However, there are exceptions to the general rule that punitive damages are not recoverable in breach of contract actions. When the conduct of a party to the contract has gone beyond mere breach and when the conduct amounts to or is accompanied by an independent willful tort, punitive damages may be recoverable even though the independent tort is not pleaded. Physicians Mutual Ins. Co. v. Savage (1973), Ind. App., 296 N.E.2d 165; Hedworth v. Chapman (1963), 135 Ind. App. 129, 192 N.E.2d 649; Murphy Auto Sales, Inc. v. Coomer, supra. Punitive damages have also been allowed in actions involving breaches of a public duty by public utilities, public carriers, public officers, etc. C. McCormick, Law of Damages § 81, at 287-88 (1935), Miner, The Expanding *380 Availability of Punitive Damages in Contract Actions, 8 Ind.L.Rev. 668, 678 (1975). See Indiana Union Traction Co. v. Heller (1909), 44 Ind. App. 385, 89 N.E. 419. It should be pointed out that punitive damages are not proper in every case involving tortious conduct or breach of a public duty. For example, the showing of mere negligence alone will not support an award of punitive damages. Sinclair Refining Co. v. McCullom (1940), 107 Ind. App. 356, 24 N.E.2d 784. The nature of tortious conduct warranting the award of punitive damages has been described in the Indiana cases as conduct that is malicious, oppressive, or grossly fraudulent, or conduct evidencing a wanton disregard of the rights of others or heedless disregard of the consequences. Harness v. Steele (1902), 159 Ind. 286, 64 N.E. 875; Jeffersonville Silgas, Inc. v. Wilson (1972), Ind. App., 290 N.E.2d 113; Murphy Auto Sales, Inc. v. Coomer, supra. However, for the reasons stated below, we do not feel that recent decisions of this Court should be interpreted as allowing punitive damages in every breach of contract action when there is a showing of malicious or oppressive conduct, unaccompanied by conduct amounting to an independent tort.
We do not feel that the doctrine of punitive damages should be expanded to contract actions because:
(1) Oppressive breaches of contract, unaccompanied by tortious conduct, do not warrant punishment through the medium of punitive damages.
(2) Punitive damages are not the proper remedy for inadequate compensatory damages.
The sole purpose of punitive damages in Indiana is to punish certain outrageous conduct in order to deter such conduct in the future. Capitol Dodge, Inc. v. Haley (1972), Ind. App., 288 N.E.2d 766; Murphy Auto Sales, Inc. v. Coomer, supra; Indianapolis Bleaching Co. v. McMillan (1916), 64 Ind. App. 268, 113 N.E. 1019. The whole concept of punitive damages has been criticized as allowing punishment in a civil proceeding without the safeguards afforded in a criminal trial. C. McCormick, Damages § 77, at 276. However, in the case of outrageous tortious conduct, the use of punitive damages to deter such conduct in the future may be justified to further society's interest in the public health and safety. The duty to refrain from tortious conduct is a duty owed to the public in general. Allowing punitive damages in cases involving breach of a special public duty, i.e., public carriers and public utilities, may also be justified on the grounds that the duty involved is a public duty. However, in a contract action, the duty involved is a duty to a private party. Although society has an interest in the smooth operation of commercial transactions, we do not believe that this interest should be furthered by subjecting the private parties to the uncertainty of punitive damages. We do not agree that "... [a] breach of contract is a wrong as much as a tort." McClellan, Exemplary Damages in Indiana, 10 Ind.L.J. 275, 279 (1935). Many breaches of contract arise because of a valid dispute as to the scope of the contractual obligation or because of inability to perform. Clearly, breach of contract in such cases is not a "wrong" warranting punishment by punitive damages. Even in cases of unjustified intentional breach of contract unaccompanied by tortious conduct, we do not believe that the "wrong" involved is a wrong warranting the intrusion of punitive damages into a private transaction. The threat of punitive damages should not be allowed to chill the assertion of a valid contract dispute or to foreclose a contracting party from breaching a contract he no longer desires to consummate. With the exception of recovery of attorney fees, the aggrieved party has an adequate remedy in the recovery of compensatory damages. For example, in addition to Batchelor's recovery under IC 1971, XX-X-X-XXX(2) (Burns Code Ed.) for breach of warranty, he would be entitled to *381 recover any incidental and consequential damages under IC 1971, XX-X-X-XXX (Burns Code Ed.)
It has been advanced that punitive damages should be allowed in contract actions volving malicious or oppressive breach to fully compensate the plaintiff in those cases when high litigation costs and low actual damages discourage the filing of a valid breach of contract action. Miner, The Expanding Availability of Punitive Damages in Contract Actions, 8 Ind.L.Rev. 668, 671 (1975). Expanding punitive damages to oppressive breaches of contract is not the proper remedy for inadequate compensatory damages. Utilizing a punitive damages award to reimburse litigation costs would often not only make the aggrieved party whole but result in a windfall to him at the expense of the breaching party. The sole purpose of punitive damages is punishment, not compensation. Capitol Dodge, Inc. v. Haley, supra.
Many times, the oppressiveness of the breach is dependent upon the non-breaching party's changing position. In some cases, allowing punitive damages to "punish" the breaching party, because his failure to perform turns out to be oppressive, circumvents the rule of Hadley v. Baxendale (1854), 9 Exch. 341, i.e. "damages are recoverable only for those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made." 5 A. Corbin, Corbin on Contracts § 1007, at 70 (1964).[2] The difficulties involved in applying the foreseeability test of Hadley v. Baxendale, supra, are not properly remedied by expanding contract damages to include punitive damages.
We do not interpret recent Indiana cases as expanding recovery of punitive damages to contract actions. The case of Jerry Alderman Ford Sales, Inc. v. Bailey (1972), Ind. App., 291 N.E.2d 92, aff'd on rehearing, 294 N.E.2d 617 (1973), involved an action for conversion. The precise question before the Court was whether evidence of "fraud" was properly admitted into evidence. In Jerry Alderman Ford, supra, 291 N.E.2d at 98, the Court stated:
"It may be observed that it is quite possible for a single act to constitute not only actionable fraud, if such fraud were alleged, but to constitute as well, evidence of a malicious or fraudulent state of mind on the part of the defendant so as to authorize the award to the plaintiff of punitive damages pursuant to a complaint for contract recission and damages. (sic) (Murphy Auto Sales, Inc., supra) or as here, a complaint for damages for conversion or for breach of a contract of bailment... ."
Reliance upon Murphy Auto Sales, Inc. v. Coomer, supra, which enunciates the general rule that punitive damages are not recoverable in contract actions, would dispel any implication that the above passage was intended to expand the recovery of punitive damages to cases involving breach of contract unaccompanied by tortious conduct. Clearly, evidence of a malicious or fraudulent state of mind was admissible in the Jerry Alderman Ford case in connection with the claimed oppressive conversion.
Both Rex Insurance Co. v. Baldwin (1975), Ind. App., 323 N.E.2d 270 and Vernon Fire & Casualty Ins. Co. v. Sharp (1974), Ind. App., 316 N.E.2d 381 involved suits on insurance contracts.[3] In Rex Insurance Co. v. Baldwin, supra, the insurer *382 knowingly asserted a defense precluded by its "incontestable clause." See, IC 1971, XX-X-XX-X (Burns Code Ed.). Although not expressed in the opinion, the basis for the decision in Rex Insurance may have been an implied statutory duty to pay the insured's claim because of the incontestability clause. See State v. District Ct. of Eighth Judicial Dist. (1967), 149 Mont. 131, 423 P.2d 598. In Vernon Fire & Casualty Ins. Co. v. Sharp, supra, the insurers argued that since a good faith dispute existed regarding the amount of liability, the punitive damages award was improper. It does not appear that the insurers argued on appeal that punitive damages were improper because the action was a contract action unaccompanied by tortious conduct. In Vernon Fire & Casualty Ins. Co. v. Sharp, supra, 316 N.E.2d at 384, the Court stated:
"Insofar as the sufficiency of the evidence to support an award of punitive damages is concerned Indiana law permits recovery of punitive damages where the conduct of the wrongdoer indicates a heedless disregard of the consequences, malice, gross fraud, or oppressive conduct. True Temper Corp. v. Moore (1973), Ind. App., 299 N.E.2d 844; Alderman Ford Sales v. Bailey (1972), Ind. App., 291 N.E.2d 92; Physicians Mutual Ins. Co. v. Savage (1973), Ind. App., 296 N.E.2d 165... ."
The authority cited in Vernon Fire & Casualty Ins. Co., supra, does not support a rejection of the general rule that punitive damages are not recoverable in contract actions unaccompanied by tortious conduct or a special duty to the public. The True Temper Corp. case involved an action for trespass; Jerry Alderman Ford Sales, Inc. involved an action for conversion, and in Physicians Mutual Ins. Co. the trial court specifically found fraud. We need not here decide whether the Rex Insurance Co. and Vernon Fire & Casualty Ins. Co. cases are based on a rationale that insurers are in the same position as public utilities and public carriers. For the reasons stated above, we do not interpret Jerry Alderman Ford Sales, Inc., Rex Insurance Co. or Vernon Fire & Casualty Ins. Co. as allowing the recovery of punitive damages in contract actions when there is no showing of conduct amounting to an independent tort.

II.

Fraud
Batchelor contends in his brief that the jury's award of punitive damages is proper because there is evidence of fraud on the part of Hibschman Pontiac, Inc.:
"... The evidence also shows that Hibschman Pontiac represented that defects were corrected in Batchelor's car when in fact the defects were not corrected and the employees of Hibschman Pontiac knew that the defects were not corrected when the representations were made to Batchelor... . In other words, the agents and employees of Hibschman Pontiac were waiting until the warranty expired so they could claim that they had no responsibility to fix the automobile... ."
We have reviewed the record and find no evidence of conduct amounting to actionable fraud. In reviewing the record before us, we are aware of our duty to consider the evidence most favorable to the appellee together with all reasonable inferences which may be drawn therefrom. We may not weigh the evidence nor judge the credibility of the witnesses. Capitol Dodge, Inc. v. Haley, supra; Physicians Mutual Insurance Co. v. Savage, supra.
In early March, 1969, Batchelor purchased a new 1969 Pontiac GTO automobile from Hibschman Pontiac, Inc. During negotiations for the sale of the automobile, Batchelor had been assured that the service department at Hibschman was of high *383 quality and that the dealership would fix anything wrong with the automobile. Batchelor began to notice defects in the automobile as it was initially driven from the dealership. Several days after Batchelor took delivery of the automobile, he returned it to Hibschman Pontiac with a list of defects. The service manager at Hibschman Pontiac informed Batchelor that the car was repaired, but in fact, all of the defective items were not corrected. Batchelor took his car back approximately twelve times during the warranty period, but the defects in his new car were never repaired to his satisfaction. Eventually, after the warranty period had run on the GTO automobile, many of the defects were corrected elsewhere.
As pointed out in Physicians Mutual Insurance Co., supra, 296 N.E.2d at 169, fraud has five essential elements: representation, falsity, scienter, reliance and injury. Although Hibschman's service manager represented that the automobile was repaired when, in fact, it was not repaired, the evidence is uncontradicted that there was no reliance by Batchelor on these statements. Regarding the first time Batchelor took his new automobile in for repairs, Batchelor testified:
"Q. When you picked up the car, after the first time you took it to him for repairs, did you notice whether he fixed all these defects or not?
"A. Yes, we noticed immediately many of the defects on the list had not been, to our knowledge, touched.
"Q. Did he make any representation to you he had fixed some things that were not fixed?
"A. Yes, when I called from Bethel, he said, `Yes, the car is all ready to go. We want you to come pick it up.'
* * * * * *
"A. Well, like I say, when I went back to pick the car up, before I drove it off I noticed many things unsatisfactory about it... ."
Batchelor's continued efforts to obtain satisfactory repairs to his automobile within the warranty period refute his contention that he relied on the service manager's statements that his automobile was repaired. Inability or refusal of Hibschman Motors to repair Batchelor's automobile support an action for breach of warranty but not for fraud.
Pursuant to the Indiana Rules of Procedure, Appellate Rule 15(M), the part of the trial court's judgment on the verdict awarding punitive damages against Hibschman Pontiac, Inc. in the sum of $15,000.00 is reversed.
HOFFMAN, J., concurs.
GARRARD, J., concurs with opinion.
GARRARD, Judge (concurring).
This case requires us to examine the language employed in the Indiana decisions dealing with punitive damages in the light of our present rules of civil procedure and the concepts of notice pleading.
Our cases, as those of most states, traditionally have held that punitive damages may not be awarded in an action at law brought upon the theory of breach of contract. Voelkel v. Berry (1966), 139 Ind. App. 267, 218 N.E.2d 924; Hedworth v. Chapman (1963), 135 Ind. App. 129, 192 N.E.2d 649. They may, however, be awarded in tort claims where the elements necessary to their recovery are present.
Under code pleading and practice, this distinction had practical significance because if the claim were pleaded as a breach of contract, recovery for tort would be denied. See, e.g., Parrill v. Cleveland, etc., R.R. Co. (1900), 23 Ind. App. 638, 55 N.E. 1026.
However, our present rules seek the pleading of facts and circumstances rather *384 than legal theories. Ayr-Way Stores, Inc. v. Chitwood (1973), Ind., 300 N.E.2d 335. Accordingly, Indiana Rules of Procedure, Trial Rule 54(C) even provides that upon entry of judgment, the successful party shall be granted the relief to which he is entitled, whether or not his pleadings demanded such relief.
The impact of this procedure is apparent when one recalls that Indiana has long recognized that conduct which amounts to a breach of contract may equally amount to commission of a tort. Flint & Walling Mfg. Co. v. Beckett (1906), 167 Ind. 491, 79 N.E. 503.
Accordingly, it would appear that where a party, through his complaint and the pre-trial order (if one is entered), has notified the opposing party that he seeks punitive damages, the issue is whether the proof is sufficient to establish commission of a tort and the elements necessary for an allowance of punitive damages. See, Jerry Alderman Ford Sales, Inc. v. Bailey (1972), Ind. App., 291 N.E.2d 92.
Of course, mere commission of a tort does not justify a punitive award. Such damages are awarded in the interest of society. Taber v. Hutson (1854), 5 Ind. 322. They rest upon established public policy seeking to promote public safety and to punish the offender and deter him and others from similar future conduct. Murphy Auto Sales, Inc. v. Coomer (1953), 123 Ind. App. 709, 112 N.E.2d 589. Thus, to justify imposition of such damages, the offender's conduct must be such that it imports more than another suffering injury as a consequence of a breach of duty committed by the offender. The public purpose of such damages is underscored by the general view, accepted in Indiana, that even though all the elements to recover such damages are present, their award is discretionary. The claimant may not successfully assert a right to such an award. Indianapolis Bleaching Co. v. McMillan (1916), 64 Ind. App. 268, 113 N.E. 1019.
An examination of prior Indiana decisions as to when punitive damages may be awarded leads to two conclusions.
First, while the decisions refer to such descriptive terms as malice, gross fraud, oppressive conduct, wantonness, heedless disregard of the consequences, insult, violence, abuse and outrageous conduct, this language is intended as descriptive rather than definitive.[1]
Not only do the terms recited vary somewhat from case to case, they are sometimes used conjunctively (see, Murphy Auto Sales, Inc. v. Coomer, supra), and sometimes disjunctively. (See, Jeffersonville Silgas, Inc. v. Wilson (1972), Ind. App., 290 N.E.2d 113.) This is emphasized in Wheatcraft v. Myers (1914), 57 Ind. App. 371, 378, 107 N.E. 81, and again in Murphy Auto Sales, supra, where the courts stated,
"... [W]here malice, fraud, oppression, etc. enter into a tort, exemplary damages may be assessed." (Emphasis added)
Secondly, at the core of these descriptions is a consideration of the quality of the actor's conduct that characterizes it as reprehensible. It embodies a consciousness *385 of intended or probable effect calculated to unlawfully injure the personal safety or property rights of others. In some instances it may consist of the conscious desire to maximize rather than mitigate the amount of injury suffered.
If one were to select a single word or term to describe this essence, it would be "malice." To warrant punitive damages the tort complained of must be committed maliciously. The malice may be actual or constructive. Actual malice may be express or implied.[2]
Malice may be implied from commission of the tort in a violent, abusive, insulting or oppressive manner.[3]
Constructive malice exists where the act or conduct is performed in such a reckless or wanton manner that the law will imply malice from the nature of the conduct and the actor's heedless disregard of the consequences and the rights of others.
I agree with Judge Staton that any claim of Batchelor for fraud in the representations made by Hibschman that work was performed when in fact it was not, must fail for lack of injurious reliance. However, that does not end the inquiry.
The remaining question is whether the pleadings and proof disclosed other tortuous conduct by Hibschman which was established as accompanied by the necessary malice to justify the award. Since my examination of the record does not disclose any such tort accompanied by malice, I concur in the result reached by Judge Staton.
Batchelor's proof entitled him to compensatory damages; it did not justify an award of punitive damages.
NOTES
[1] This is also the rule in the majority of our sister states. Mid South Cotton Growers Assoc. v. Woods (N.D.Miss. 1974), 380 F. Supp. 429; Lipschutz v. Gordon Jewelry Corp. (S.D.Tex. 1974), 373 F. Supp. 375; Liberty Mutual Ins. Co. v. Coburn (1974), 132 Ga. App. 859, 209 S.E.2d 655; Henry Morrison Flagler Museum v. Lee (Fla.App. 1972), 268 So.2d 434; Garrett v. American Family Mutual Ins. Co. (Mo. App. 1974), 520 S.W.2d 102. But see Isagholian v. Carnegie Institute of Detroit, Inc. (1974), 51 Mich. App. 220, 214 N.W.2d 864; State Farm General Ins. Co. v. Clifton (1974), 86 N.M. 757, 527 P.2d 798; Kirk v. Safeco Ins. Co. of America (C.P. Franklin County 1970), 28 Ohio Misc. 44, 273 N.E.2d 919.
[2] For Indiana cases stating the rule of Hadley v. Baxendale, supra, see Strong v. Commercial Carpet Co. (1975), Ind. App., 322 N.E.2d 387, n. 2 at 392; Schaffner v. Preston Oil Co. (1927), 94 Ind. App. 554, 154 N.E. 780; Western Union Telegraph Co. v. Biggerstaff (1912), 177 Ind. 168, 97 N.E. 531.
[3] See also this Court's recent opinion in Sexton v. Meridian Mutual Ins. Co. (1975), Ind. App., 337 N.E.2d 527. In Sexton, this Court reversed the trial court's grant of a motion for judgment on the evidence in favor of Meridian Mutual Ins. Co., which withdrew the issue of punitive damages from the jury, on the basis of Rex Ins. Co. v. Baldwin and Vernon Fire & Casualty Ins. Co. v. Sharp.
[1] Two cases, Jones v. Hernandez (1970), 148 Ind. App. 17, 263 N.E.2d 759, and True Temper Corp. v. Moore (1973), Ind. App., 299 N.E.2d 844, speak only of "heedless disregard of the consequences." Yet, it is clear that the court did not intend this language as definitive of a ground for recovering punitive damages. The court was addressing only the aspect of whether the defendant must foresee the consequences that will occur from his conduct. The term, however, fails to describe by any ascertainable standard the quality of a defendant's conduct. That necessary quality was assumed from the defendant's recklessness in Jones and the trial court's finding and the court's discussion of motive in True Temper.
[2] An act may be performed maliciously although the actor has no express hatred for his victim. Neither is it necessary that he foresee the harm that actually results.
[3] The relative position of the parties, the time available for response, and the apparent gravity of the harm may all be relevant in determining whether conduct is oppressive.