**MILLER PIPELINE CORPORATION,**
**Appellant (Defendant Below),**

v.

**Delmar BROEKER and Barbara Broeker, Appellees (Plaintiffs Below).**

**No. 2–682A163.**

Court of Appeals of Indiana,
Second District.

Feb. 27, 1984.

Joseph M. Dietz, Rick D. Meils, Meils, Zink, Thompson, Page & Dietz, Indianapolis, for appellant.

Louis Buddy Yosha, Teresa L. Todd, Yosha & Cline, Indianapolis, for appellees.

SULLIVAN, Judge.

This appeal seeks reversal of a jury award of punitive damages for Delmar Broeker (Broeker) and against Miller Pipeline Corporation (Miller Pipeline).[1] On April 12, 1979, Broeker was injured when his vehicle was rear-ended by a truck driven by James Bartrum (Bartrum), an employee of Miller Pipeline. Broeker filed suit against Bartrum and Miller Pipeline for damages.[2] An amended complaint added a request for punitive damages. The jury awarded Broeker $50,000 in compensatory damages and $75,000 in punitive damages. Miller Pipeline does not challenge the award for compensatory damages. It presents only the following issue for review:

Was there sufficient evidence to support the trial court's submission of the punitive damage issue to the jury and to support the jury's verdict awarding such damages? [3]

Upon examining the evidence and the arguments presented by counsel, we restate the issue as follows:

When does heedless or reckless disregard of the consequences or rights of others imply malice or the state of mind necessary to justify an award of punitive damages?

Examining the evidence in a light most favorable to the judgment, we find that on April 12, 1979, at approximately 7:00 A.M., Broeker, driving a 1976 Dodge van, was stopped for a traffic signal at an intersection in Marion County, Indiana. He sustained back injuries when a truck owned by Miller Pipeline and driven by Bartrum, an employee of Miller Pipeline, struck the rear of the van when the brakes on the truck failed. The truck was pulling a 2,000 pound air compressor at the time.

Larry Bilbrey (Bilbrey), another employee of Miller Pipeline, was a passenger in the truck at the time of the collision. Both Bartrum and Bilbrey had been intermittently driving the particular company truck involved in the accident for ten days. During that entire time, the red brake warning light was lighted. Apparently, the warning light had also been on at previous times. In addition, Bartrum and Bilbrey had experienced difficulty with the brakes. There was usually no problem in the morning hours, but by mid-afternoon, the brakes had to be pumped several times before the truck could be stopped. On several occasions, the brakes had gone completely to the floor.

Realizing that this was dangerous, Bartrum reported the problem to his foreman, Paul Groves (Groves). Groves told Bartrum that it should be "taken care of," but he did not give Bartrum any specific instructions, nor did he ever check thereafter to verify that the problem had been corrected. On the day preceding the collision, or possibly the morning of the accident, Bilbrey and Bartrum took the truck to the Miller Pipeline maintenance department, where they reported the brake problem to a mechanic.

One of Miller Pipeline's mechanics inspected the brake fluid level in the master

---

1. Broeker's wife Barbara filed a separate complaint for damages, alleging loss of services. The trial court dismissed this cause on the ground it had been merged with Broeker's amended complaint. The jury awarded $25,000 to Barbara Broeker. That verdict is not being challenged.

2. Upon motion by Broeker, Bartrum was dismissed from the suit. A third defendant, Don W. Miller, Inc., who allegedly rented the truck to Miller Pipeline, was also dismissed.

3. At trial and in his appellant's brief, Broeker challenged the giving of any instruction which would authorize an award of punitive damages but during a post-briefing conference pursuant to Appellate Rule 2(C) agreed that the asserted error in giving such an instruction was subsumed in his argument that the evidence was insufficient to justify punitive damages.

cylinder and checked the pedal for pressure. This took approximately ten minutes. The mechanic determined that the fluid level was sufficient and the truck had brakes at that moment. No repairs were done. Despite the fact that the brake warning light was still on and other company trucks may have been available for use, Bartrum went back out on the road with instructions from the mechanic to "be careful." William Wright, a witness for Broeker, testified that the brake defects responsible for the collision were not sudden occurrences and could have been discovered prior to the accident if the mechanic had done a more thorough inspection.

At the time of the collision, Miller Pipeline did not keep written maintenance records.[4] If employees discovered a problem with a vehicle, they were to bring it into the maintenance department for repair. Neither the problem nor the repairs done were recorded.

Miller Pipeline's maintenance department, which consisted of seven or eight mechanics, was responsible for maintenance of all vehicles and equipment. The department conducted yearly vehicle inspections as required by law, but there was no other regular procedure for preventative safety inspections. Most trucks, however, were examined during the winter months when business was slow. No logs were kept to indicate what work had been done or which vehicle had been inspected. Nor were there any procedures to ensure that all vehicles were inspected or to establish what an inspection would entail.

Miller Pipeline argues that an award of punitive damages is justified only if there was some evidence that its wrongful conduct was intentional and malicious. Broeker, on the other hand, maintains that a showing of malice, ill will, or intentional wrongdoing is not necessary; rather, punitive damages may be imposed if Miller Pipeline acted willfully in an abusive, wanton or oppressive manner in heedless disregard of the consequences.

Broeker relies on the fact that in many Indiana decisions, the courts have described the conduct necessary to support punitive damages as that which is malicious, oppressive, *or* in heedless disregard of the consequences. *See Sexton v. Meridian Mutual Ins. Co.* (1st Dist.1975) 166 Ind. App. 529, 337 N.E.2d 527; *Lou Leventhal Auto Co., Inc. v. Munns* (1st Dist.1975) 164 Ind.App. 368, 328 N.E.2d 734.

He stresses the fact that the term "heedless disregard of the consequences" is used in the disjunctive. Moreover, he points out that some cases have used the term without reference to other descriptive words.[5]

As Miller Pipeline points out, our courts have previously addressed this precise issue. In *Hibschman Pontiac, Inc. v. Batchelor* (3rd Dist.1976) Ind.App., 340 N.E.2d 377, Judge Garrard, in an oft-cited concurring opinion, discussed the issue. He explained that although the words "heedless disregard of the consequences" have been used in the disjunctive as well as the conjunctive, that language was intended to describe conduct rather than define it. *Id.* at 384. He stated:

**4.** Miller Pipeline initiated a written, preventative maintenance program after the collision, but does not concede that lack of a prior written program constituted negligence.

**5.** This court has previously recognized that *Jones v. Hernandez* (1970) 148 Ind.App. 17, 263 N.E.2d 759 and *True Temper Corp. v. Moore* (3rd Dist.1973) 157 Ind.App. 142, 299 N.E.2d 844, speak only of a heedless disregard of the consequences. However, this court has concluded that *Jones* and *True Temper* did not intend that language to be a definitive ground for recovering punitive damages because the conduct involved in those cases was more direct

and deliberate. *Peterson v. Culver Educational Foundation* (1st Dist.1980) Ind.App., 402 N.E.2d 448; *Hibschman Pontiac, Inc. v. Batchelor* (3rd Dist.1976) Ind.App., 340 N.E.2d 377, 384 n. 1 (Garrard, J., concurring.) Broeker also cites *Capitol Dodge, Inc. v. Haley* (2d Dist.1972) 154 Ind.App. 1, 288 N.E.2d 766, in which the court again used only the phrase "heedless disregard of the consequences". Like *True Temper* and *Jones,* the misconduct justifying the award of punitive damages was clearly more reprehensible than a mere disregard of the consequences. The jury there had found the defendant guilty of consumer fraud.

"[A]t the core of these descriptions is a consideration of the quality of the actor's conduct that characterizes it as reprehensible. It embodies a consciousness of intended or probable effect calculated to unlawfully injure the personal safety or property rights of others. In some instances it may consist of the conscious desire to maximize rather than mitigate the amount of injury suffered.

If one were to select a single word or term to describe this essence, it would be "malice." *To warrant punitive damages the tort complained of must be committed maliciously.* The malice may be actual or constructive. Actual malice may be express or implied." *Id.* at 385 (footnotes omitted) (Emphasis supplied.) [6]

Elaboration on the point was made in *Prudential Ins. Co. v. Executive Estates* (2d Dist.1977) 174 Ind.App. 674, 369 N.E.2d 1117. In that case, Prudential breached its duty to protect the mortgagor (appellee) when disbursing mortgage proceeds. This court determined that the trial court erred in instructing the jury that it could award punitive damages if they found Prudential's wrongful acts had been committed in "a willful, or wanton disregard of the rights of" the mortgagor. Our court stated that "conduct supporting punitive damages must be of a more reprehensible character, e.g., malice, gross fraud, oppressive conduct, or heedless disregard of the consequences." *Id.* at 1131. After eliminating malice, gross fraud, or oppression in Prudential's actions, the court proceeded to determine whether conduct characterized as "heedless or reckless disregard of consequences" could justify imposition of punitive damages. The court noted that not only is the concept that a heedless disregard of consequences will support punitive

damages "recognized in principle more than actuality," but also that the term is used "as an alternate to the description of more oppressive conduct." *Id.* at 1131. Like Judge Garrard, the Second District said: "When specific conduct has been characterized as a heedless or reckless disregard of consequences, the conduct would appear to be more accurately characterized as a conscious and intentional wrongdoing better described by such words as oppression or malice." *Id.* at 1131. The court concluded that no decision in Indiana had yet gone so far as to justify imposition of punitive damages *solely* on the basis of a concept of heedless disregard of the consequences. Something more than that state of mind is necessary. Rather the state of mind is more like "actual malice or a wantonness from which the law could imply malice." *Id.* at 1131. *Accord, Harper v. Goodin* (1st Dist.1980) Ind.App., 409 N.E.2d 1129; *Peterson v. Culver Educational Foundation, supra,* 402 N.E.2d 448; *First Federal Savings & Loan Ass'n v. Mudgett* (1st Dist.1979) Ind.App., 397 N.E.2d 1002; *Grad v. Cross* (1st Dist.1979) Ind.App., 395 N.E.2d 870.

Broeker contends, however, that these decisions are not controlling. First, he argues that Indiana courts have not addressed the issue in the context of the fact situation presented. Therefore, it would be more appropriate to look at Indiana decisions which discuss punitive damages in motor vehicle collisions and at decisions in other jurisdictions in which punitive damages were imposed in analogous circumstances.[7] Broeker additionally maintains that cases such as *Hibschman Pontiac, Inc. v. Batchelor, supra,* 340 N.E.2d 377, should not be interpreted as requiring a finding of malice to support an award of

---

6. It is more accurate to say that the requisite malice must be "actual" but that it may be either express or implied. In this sense, constructive malice is implied rather than express.

7. Miller Pipeline also cites numerous Indiana and foreign court holdings, but for the opposite proposition, that punitive damages should not be allowed. We agree with Broeker that many

of those decisions involving brake failure in vehicle collisions, to which Miller Pipeline gives lengthy discussion, are not particularly helpful because the issue of punitive damages was never raised and any determination of how the courts would have dealt with that issue is pure speculation.

punitive damages. We do not agree with either argument.

## I.

### A. PUNITIVE DAMAGES IN INDIANA VEHICLE COLLISION DECISIONS

Although the Indiana cases Broeker cites do discuss an award of punitive damages in motor vehicle collisions, those cases must be distinguished. The issue presented in those decisions was not whether a heedless disregard of consequences would support a punitive damage award. In *Smith v. Mills* (1st Dist.1979) 179 Ind.App. 459, 385 N.E.2d 1205, the defendant was charged with disorderly conduct and driving while intoxicated. Pursuant to a plea bargain, the charges were dismissed, but the defendant was fined and his license restricted. Even though the court reversed a summary judgment for the defendant on the issue of punitive damages, the issue before the court was whether the defendant could be held liable for punitive damages in a civil case when he had already been punished, but not convicted, for the same conduct.

In *Glissman v. Rutt* (3rd Dist.1978) 175 Ind.App. 493, 372 N.E.2d 1188, the driver was convicted of reckless driving. Here the court considered whether conduct which indicated a heedless disregard of the consequences should create an exception to the general rule prohibiting punitive damages when the defendant has been convicted of a crime for the same offense. The court held it should not.

Finally, in *Norfolk & Western Railway Co. v. Hartford Accident & Indemnity Co.* (N.D.Ind.1976) 420 F.Supp. 92, the issue was whether it would undermine the public policy if a corporation avoided paying punitive damages by means of insurance. The court noted that punitive damages may be directly or vicariously imposed on a corporation, but did not address the issue whether punitive damages were appropriate in

the case. Other than stating that the corporation's agent had been involved in an auto collision that resulted in an award of punitive damages in a suit against the corporation, the court did not discuss the factual situation.

### B. PUNITIVE DAMAGES IN VEHICLE COLLISIONS IN OTHER JURISDICTIONS

We next consider the cited decisions from other jurisdictions which have either discussed an award of punitive damages in similar factual situations or have defined similar conduct as a heedless disregard of the consequences. Both Broeker and Miller Pipeline cite these decisions to support their respective contentions.

In *Goff v. Lubbock Bldg. Products* (Tex. Ct.App.1953) 267 S.W.2d 201, the Texas Court of Appeals affirmed an award of punitive damages against a corporation when its driver hit and killed another because the brakes on the company truck did not hold. Like Miller Pipeline, the policy of the company was to have the employees report vehicle problems. Prior to the collision, the driver had informed the superintendent that he had to pump the brakes to stop the truck. In that case, however, the company, due to a labor strike, had knowingly hired a minor without experience or a license. When the accident occurred, the driver was speeding. Despite having observed the brakes fail that very morning, the superintendent insisted the employee continue to drive the truck. No inspection or repairs were ever attempted. Here, Miller Pipeline did not ignore the brake problem. The foreman instructed Bartrum to have the truck checked, and Bilbrey and Bartrum took the truck to the maintenance department, where a mechanic inspected the brakes and determined that no repairs were necessary. Although this inspection was negligently done, there is no evidence that it was done willfully or wantonly. The mechanic found that the brake fluid level was adequate and the truck had pedal.[8]

---

8. Broeker points out that Bilbrey did not actually see the mechanic hit the pedal, so it may have

had to be pumped several times before obtain-

Although this was a cursory inspection in view of the fact that the red brake light remained on, the record reveals that the mechanic told Bartrum and Bilbrey he believed the light indicated a problem with the emergency brake. The fact that the mechanic told Bartrum and Bilbrey to "be careful" does not indicate that this conduct was more than poor judgment. The mechanic did not testify; therefore the intended meaning of his words to "be careful" is mere speculation.

In *Nichols v. Baker* (1966) 101 Ariz. 151, 416 P.2d 584, the brakes on a company truck failed as it came down a mountain carrying a heavy load of logs. The plaintiff was injured when he jumped from the truck. Two months previous to the accident, a driver had reported brake failure, and an inspection at that time revealed numerous defects. The defendant company repaired only one of those known defects before allowing the truck to be used again. The Supreme Court of Arizona permitted an instruction upon "wanton" negligence. Punitive damages were not an issue. In the case at bar, Miller Pipeline attempted to remedy the brake problem. Although it is true that because of the negligence and misjudgment of the mechanic, the defects were not discovered, Miller Pipeline did not send the truck out on the road *knowing* that there were defects still uncorrected.

The red brake warning light did indicate a continuing problem, but both Bilbrey and Bartrum testified that they were confused about what the light meant. Both appeared to believe it could indicate a problem with the emergency brake. Bilbrey did admit that, after the inspection, he felt the truck was being sent back on the road with bad brakes, but he also testified that he did not have any reason to doubt the mechanic's judgment. Furthermore, Bartrum, who was driving the truck stated that on the day of the accident he did not feel the truck was dangerous because he believed pumping the brakes would stop the truck.

In *Womack v. Preach* (1945) 63 Ariz. 390, 163 P.2d 280, *supp. op.*, 64 Ariz. 61, 165 P.2d 657, the Supreme Court of Arizona held that where the defendant corporation's truck was heavily-loaded and the driver had previously reported a problem with the brakes, the issue of whether the defendant's actions were wanton was properly submitted to the jury. Even though the court defined wanton as "a reckless disregard of the rights of others or a reckless indifference to results," it must be noted that neither an inspection or repair were attempted. *Id.* at 285. Moreover, the plaintiff was attempting to prove wanton behavior, not for the purpose of punitive damages, but to overcome the corporation's defense of contributory negligence.

In *Kindellan v. Arwood Material Co.* (D.Tenn.1972) 338 F.Supp. 1210, the court upheld a jury award of punitive damages where plaintiff was injured in a collision caused by defective brakes in a truck overloaded with gravel. The company was found negligent in permitting the truck to be driven while overloaded beyond its effective braking capacity and for violating a weight-on-axle statute. Although Miller Pipeline apparently did not have a policy to determine who was responsible for calculating gross vehicle weight and towing capacity when a truck pulled a heavy object such as an air compressor, there is no evidence that Miller Pipeline's truck was loaded beyond the brakes' limits, as was the case in *Kindellan*. Moreover, the driver in *Kindellan* was unlicensed and speeding at the time of the collision.

In *West Cash & Carry Bldg. Materials of McComb, Inc. v. Palumbo* (Miss.1979) 371 So.2d 873, the plaintiff, stopped at an intersection, was injured when hit from behind by a truck owned by the defendant corporation. The truck's brakes would not hold. Again, the driver of the truck had reported difficulty stopping the truck; that he had to pump the brakes often to stop. On the day of the accident, the driver refused to drive the truck, but his supervisor ordered him to drive the truck. The Missis-

ing "pedal." There is no evidence, however, to support that conclusion.

sippi Supreme Court held that the issue of punitive damages had been improperly submitted to the jury because the trial court had ignored evidence that the company's supervisor had responded to the report of bad brakes by taking the truck to a reputable mechanic for inspection. On one occasion, five months before the collision occurred, repairs had been made. On another, just two weeks before the accident, an inspection was done, but repairs were deemed not necessary, just as Miller Pipeline's mechanic decided. Broeker stresses that even though the Mississippi court reversed the jury award of punitive damages, this case is distinguishable because the mechanic who inspected the truck was not an employee of the defendant corporation. This is not a significant distinction, however, because there is uncontradicted testimony that Miller Pipeline's policy was to hire experienced mechanics.[9]

## C. PUNITIVE DAMAGES IN PRODUCTS LIABILITY DECISIONS IN OTHER JURISDICTIONS

Broeker cites products liability decisions in other jurisdictions which allowed recovery of punitive damages against manufacturers of motor vehicles when a collision resulted from defective components. Broeker would have us compare the manufacturer's design defects to the brake defects present in Miller Pipeline's truck. There is, however, a distinct difference between a products liability case involving a design defect which effects hundreds or thousands of people throughout the United States and a negligence action involving a defect in one particular vehicle.

■ The purpose of punitive damages is to punish the wrongdoer and in the public interest deter others from similar misconduct. *Travelers Indem. Co. v. Armstrong* (1982) Ind., 442 N.E.2d 349; *Riverside Ins. Co. v. Pedigo* (4th Dist.1982) Ind.App., 430 N.E.2d 796. Although imposition of punitive damages would certainly punish Miller Pipeline, it is not so clear that they would deter similar wrongdoing or even protect the public interest.

Broeker presented Paul Hughes, an expert witness on preventative maintenance programs. Mr. Hughes had worked primarily with trucking companies engaged in extensive interstate travel with fleets of up to 1600 vehicles.[10] He described preventative maintenance programs, which utilize written repair records, guarantee inspections at regular intervals, thus ensuring that the vehicles are safe to operate. The programs are also designed to preserve the maximum trade-in value of each vehicle.[11]

There is no evidence that Miller Pipeline's system of reporting mechanical problems as they occurred was inadequate for a company which is not in the business of transportation and whose trucks travel short distances.[12] Although Mr. Hughes testified that he did not know of any particular trucking company that did not use some form of a written fleet maintenance record, his testimony on preventative maintenance programs was specifically not offered to establish a standard of practice in the business.

9. Miller Pipeline did not give its mechanics any instruction or training on company repair policies or procedures, but they were instructed to make all necessary repairs. Broeker also suggests that Miller Pipeline's maintenance department had a general attitude of not wanting to do repair work when it was brought to them. Bartrum testified that the department was "ambunctious", but he could not define that term and stated that, nonetheless, they would do the repair work.

10. Miller Pipeline indicates that its fleet was much smaller, but the record is silent as to the actual number of vehicles Miller Pipeline possessed. The evidence establishes only that there were over 100 vehicles. Mr. Hughes had worked for one gas company which did work similar to that which Miller Pipeline does.

11. Mr. Hughes worked for common carriers which unlike Miller Pipeline were subject to federal regulations. There is conflicting evidence as to whether the preventative maintenance programs in these companies were established in part to comply with these regulations.

12. The average truck at Miller Pipeline accumulates only 3,000 miles per year. The particular truck involved in this incident was eight years old and had travelled 15,548 miles.

Similarly, although a different inspection system might have disclosed the brake defect, Miller Pipeline did conduct a yearly inspection pursuant to state law, which included a brake inspection. This yearly inspection had been performed on the truck involved in the collision. In addition, most of its vehicles were examined during the slower winter months. Even if Miller Pipeline had had different maintenance and inspection systems, its mechanic may have demonstrated the same negligent judgment; in which case, the accident would still have occurred.

Broeker stresses that in the product liability cases, the courts described the conduct supporting punitive damages as a heedless disregard of the safety of others or rights of others. Nonetheless, the defendant's actions were of a more direct and deliberate nature. In *Rinker v. Ford Motor Co.* (1978) Mo.App., 567 S.W.2d 655, Ford's safety director, knowing that some of their autos had fast idle cams subject to breakage which could cause the throttle to jam open and cause an accident, still did not take *any* steps to warn its dealers or consumers. In *Wangen v. Ford Motor Co.* (1980) 97 Wis.2d 260, 294 N.W.2d 437, Ford, knowing not only that its Mustang fuel tanks were subject to rupture and fire, but also that these defects were causing serious injury, still *intentionally concealed* that information from the public and did nothing to correct the defects, although they knew how to do so.

Apparently Broeker also is suggesting that because the courts in *Wangen* and *Rinker* did not require malice and permitted punitive damages for misconduct characterized as a complete or reckless indifference to, or conscious disregard for, the rights and safety of others, this court should apply the same standard. Indeed, in negligence cases involving vehicle collisions, some courts in other jurisdictions have held that malice is not necessary and punitive damages may be imposed if conduct is in "heedless or reckless disregard of the consequences." *Rutland v. Dean* (1939) 60 Ga.App. 896, 5 S.E.2d 601 (wilful and intentional misconduct not essential);

*Smith v. King* (1951) Ky., 239 S.W.2d 955 (court rejected defendant's argument that punitive damages could be awarded only on showing of malice or wilfulness); *Bailey v. Smith* (1925) 132 S.C. 212, 128 S.E. 423 (punitive damages justified even if no intentional wrong or conscious failure to observe due care.) Other courts, however, have held that malice is necessary and have refused to find implied malice from a heedless disregard of the consequences. *Bowles v. Lowery* (1912) 5 Ala.App. 555, 59 So. 696 (mere recklessness, without more, insufficient to support punitive damages; must be maliciously perpetrated wrong or implied equivalent); *Fuller v. Neundorf* (Okl.1956) 293 P.2d 317 (must be malice or evil intent or its equivalent).

We note that just as Indiana decisions have used various terms to describe wrongdoing which will support punitive damages, courts in other jurisdictions have done the same. Regardless of the language used, most courts have allowed punitive damages to be imposed only where the conduct is more outrageous than *mere* heedless disregard of the consequences. *See* 62 A.L.R.2d 813, 816. *See also, Smith v. Gray Concrete Pipe Co., Inc.* (1972) 267 Md. 149, 297 A.2d 721, 729 n. 3. We subscribe to this view.

## II.

Broeker contends that contract cases like *Hibschman Pontiac, Inc. v. Batchelor, supra,* 340 N.E.2d 377 and *Prudential Ins. Co. v. Executive Estates, Inc., supra,* 174 Ind.App. 674, 369 N.E.2d 1117, do not hold that a finding of malice is necessary to support an award of punitive damages. This assertion ignores the straightforward language of those decisions. Once again, the crux of Broeker's argument is that because the courts in those cases described disjunctively the conduct in various terms, including malice, malice is not the only state of mind which will justify an imposition of punitive damages. Yet, as we have previously stated, the clear conclusion of those decisions has been that if one word

were to be used to describe when punitive damages may be awarded it would be when there is "malice", actual or implied. *Harper v. Goodin, supra*, 409 N.E.2d 1129; *Peterson v. Culver Educational Foundation, supra*, 402 N.E.2d 448; *First Fed. Savings & Loan Ass'n v. Mudgett, supra*, 397 N.E.2d 1002; *Prudential Ins. Co. v. Executive Estates, Inc., supra*, 174 Ind. App. 674, 369 N.E.2d 1117; *Hibschman Pontiac, Inc. v. Batchelor, supra*, 340 N.E.2d 377.

■ We do not agree that conduct which might be described as in "heedless disregard of the consequences," is necessarily so reprehensible as to justify punitive damages. As previously discussed, this court has specifically stated that something more than a state of mind characterized as a heedless disregard of the consequences is required to impose punitive damages. *Harper v. Goodin, supra*, 409 N.E.2d 1129; *Prudential Ins. Co. v. Executive Estates, Inc., supra*, 369 N.E.2d 1117.

Although those cases were contract actions, there is no basis to disregard their logical application to tort cases. First, punitive damages are allowed in contract cases only where there are elements of an independent *tort* or a *tortious* breach. Second, the purposes of punitive damages, to punish and deter, are the same whether the cause of action is in negligence, defamation, or contract.

■ To sanction punitive damages solely upon the basis of conduct characterized as "heedless disregard of the consequences" would be to allow virtually limitless imposition of punitive damages. There is no right to punitive damages, and as a general rule, punitive damages are disfavored because they are a "windfall" to the plaintiff and allow punishment without the safeguards of criminal procedure. *See Travelers Indem. Co. v. Armstrong, supra*, 442 N.E.2d 349; *Hibschman Pontiac, Inc. v. Batchelor, supra*, 340 N.E.2d 377.

In *Travelers Indem. Co. v. Armstrong* (1982) Ind., 442 N.E.2d 349, our Supreme Court expressed concern that punitive damages be awarded only in appropriate cases. After noting that the Court of Appeals in four different cases had alternatively affirmed or denied a recovery of punitive damages for conduct which might be described as a heedless disregard of consequences, the court stated: "We are left to wonder *when* a heedless or reckless disregard of the consequences will support an inference of oppression or *malice* so as to warrant an award of punitive damages and when it will not." (Emphasis supplied.) *Id.* at 360. It proceeded to state:

> "The issues produced by the punitive damages concept are inherently issues of degree, i.e. was the conduct slightly negligent, negligent, very negligent, grossly negligent, wanton or heedless? Was the conduct malicious or merely inconsiderate or impolite?" *Id.* at 360.

Rather than specify which degree of misconduct would support an imposition of punitive damages or attempt to redefine the term heedless disregard of consequences, the court adopted a more strict burden of proof: clear and convincing evidence. In discussing the adoption of that standard, the court noted that there is no right to punitive damages and stressed that such damages should not be allowed where the evidence is merely consistent with a hypothesis of malice, fraud, gross negligence, or oppression. *Id.* at 362.

■ It is not necessary, however, to remand this cause for trial on the issue of punitive damages, using the clear and convincing standard, because we find as a matter of law, that the evidence here does not meet even the lesser preponderance of the evidence standard.

■ Miller Pipeline's conduct cannot be condoned, and taken as a whole, may demonstrate more than failure to exercise reasonable care,[13] but it does not imply malice or an equivalent state of mind. Even if, as

13. Mere negligence or inadvertence will not support punitive damages. *Hibschman Pontiac, Inc. v. Batchelor, supra*, 340 N.E.2d 377; *Sinclair Refining Co. v. McCullom* (1940) 107 Ind. App. 356, 24 N.E.2d 784.

Broeker urges, Miller Pipeline's conduct could be characterized as a heedless disregard of the consequences, the law of Indiana requires more. Accordingly, we vacate the jury's award of punitive damages, and order the trial court to modify its judgment consistent herewith.

MILLER, J. (participating by designation), and SHIELDS, J., concur.