KOCHERT, ET AL. *v.* WISEMAN, ET AL.

[No. 970A160. Filed April 27, 1971. Rehearing denied August 24, 1971. Transfer denied November 29, 1971.]

*Eugene E. Feller,* Corydon, *William B. Janes,* New Albany, *Willard C. Shrode,* of Evansville, for appellants.

*Henry C. Ryder, D. Reed Scism, Roberts & Ryder,* of Indianapolis, *Robert N. Davis,* of Corydon, for appellees.

SHARP, J.—The Plaintiff-Appellants are stockholders in the Farmers State Bank, Lanesville, Indiana, and filed an amended complaint against the Defendants-Appellees who are stockholders and directors of Old Capital Bank and Trust Company, Corydon, Indiana. The amended complaint alleges that Defendants acquired more than 25% of the outstanding voting stock of said Farmers State Bank and the Defendant Wiseman later purchased all of said stock from the other Defendants. An injunction was sought requiring Defendant Wiseman to divest himself of said stock. Both parties filed Motions for Summary Judgment which were duly heard by the trial court. On March 3, 1970, the trial court entered summary judgment for Defendants-Appellees and stated reasons as follows:

"This cause having come on to be heard on the cross motions for summary judgment filed by the Defendants and by the Plaintiffs pursuant to Burns Ind. Stat. Ann. Sec. 2-2524; and the Court having considered the pleadings in this action, the affidavit of the Defendant, Blaine H. Wiseman, dated and filed September 13, 1968, and its accompanying Exhibit 1-8, and the deposition of the Defendant, Blaine H. Wiseman, taken on behalf of the plaintiffs on September 19, 1969; and the Court having heard oral argument and

considered the written briefs of the parties in support of their respective motions for summary judgment now finds:

(1) There is no material fact genuinely at issue.

(2) The defendant, Blaine H. Wiseman, was not in violation of the Indiana Bank Holding Company Act when he committed himself on January 1, 1968, to buy majority control of the outstanding common capital stock of Farmers State Bank, at a price of $1200.00 per share, nor was Blaine H. Wiseman in violation of said Act when he repurchased seventy (76) shares of such capital stock on May 2, 1968, from the other six defendants, for no violation of said Act can be predicated on the ownership of all of the stock in question by Blaine H. Wiseman, an individual;

(3) An individual can be neither a bank holding company nor a successor to a bank holding company under said Indiana Bank Holding Company Act;

(4) On the basis of the undisputed facts contained in Blaine H. Wiseman's published deposition, the invitation by Blaine H. Wiseman to others for them to purchase some of the shares of Farmers State Bank at $1200.00 per share and the subsequent purchase by the other six defendants on January 20, 1968, of seventy (70) of the one hundred thirty-two (132) shares which Blaine H. Wiseman had committed himself to buy, did not make this transaction a joint venture, association, or similar organization by and between the seven Defendants;

(5) The defendants did not constitute a bank holding company within the meaning of the Indiana Bank Holding Company Act, Burns Ind. Stat. Ann. Sec. 18-1814, et seq. when they purchased on January 20, 1968, and held until May 2, 1968, one hundred thirty-two (132) shares of the outstanding common capital stock of Farmers State Bank, Lanesville, Indiana;

(6) Even if the defendants constituted a bank holding company within the meaning of said Act prior to May 2, 1968, such bank holding company ceased to exist on May 2, 1968, when six of the seven defendants sold their stock in Farmers State Bank to the individual defendant, Blaine H. Wiseman;

(7) Even if the defendants violated the Indiana Bank Holding Company Act prior to May 2, 1968, said

> Act is a criminal act, which, as previously found, is not now being violated and, in any case, has not been violated since May 2, 1968, and this being a civil action, plaintiffs' cause of action, if one ever existed, has been rendered and is now moot.

And the Court having concluded that the defendants are entitled to a judgment as a matter of law;

IT IS THEREFORE ORDERED that the Defendants' motion for summary judgment is in all respects granted and the plaintiffs' motion for summary judgment is in all respects denied and it is further

Ordered, adjudged and decreed that the plaintiff have and recover nothing by their action and that the defendants recover their costs and charges.

The facts must be considered in the light most favorable to the Appellants as the parties against whom summary judgment is sought. The only sworn testimony before the trial court was the deposition and affidavit of Appellee-Defendant, Blaine H. Wiseman. The facts considered most favorable to Appellants are:

> During the relevant periods involved in this case, January 1, 1968 and until the present time, the plaintiffs were stockholders and directors of Farmers State Bank in Lanesville, Indiana. Continuously during the period January 1, 1968 through May 2, 1968, there were twenty thousand (20,000) shares of common capital voting stock of Old Capital Bank and Trust Company, in Corydon, Indiana, issued and outstanding. During said period each of the defendants owned stock in said Old Capital Bank and Trust Company, as follows:

| | | |
|---|---|---|
| Blaine H. Wiseman | 7215-5/9 | shares |
| James R. Davidson | 200 | " |
| Wilma L. Herthel | 600 | " |
| Conrad Renaker | 400 | " |
| Robert W. Davis | 200 | " |
| Robert W. Davis, as Trustee for his family | 520 | " |
| Albert E. Crayden | 600 | " |
| In addition, Alva E. Wiseman, the father of Blaine H. Wiseman, owned | 1400 | " |

During said period, each of the defendants, with the exception of Helen B. Crayden, constituted six (6) of the seven (7) members of the Board of Directors of said Old Capital Bank and Trust Company. The seventh director was the said Alva E. Wiseman. The defendant, Helen B. Crayden, was the wife of Albert E. Crayden. Albert E. Crayden was the brother-in-law of Blaine H. Wiseman. Blaine H. Wiseman was President and Chairman of the Board during said period, of the said Old Capital Bank and Trust Company.

On or about January 1, 1968, the defendant, Blaine H. Wiseman, promised to purchase controlling stock interest in Farmers State Bank, at and for a price of Twelve Hundred Dollars ($1200.00) per share. At the suggestion of the defendant, Albert E. Crayden, and because of the amount of money involved, the defendant, Blaine H. Wiseman, decided to offer each of the other directors of Old Capital Bank and Trust Company an opportunity to purchase part of the stock of Farmers State Bank. On or about January 2, 1968, all the directors of Old Capital Bank and Trust Company met and agreed to purchase control of Farmers State Bank. Pursuant to said original meeting and subsequent conversations, it was agreed that the seven defendants would purchase control of Farmers State Bank.

Subsequent to January 2, 1968 and prior to January 18, 1968, an application was made for and on behalf of all the defendants asking for permission for the seven defendants to acquire the majority interest of the voting stock of Farmers State Bank, Lanesville, Indiana, which application was granted by The Department of Financial Institutions of the State of Indiana to said entire group of seven defendants on January 18, 1968. All the defendants agreed among themselves as to how much stock each would purchase and each furnished his or her own funds for the purchase of the stock. The entire group of defendants entered into the arrangement as an investment primarily for profit. On January 20, 1968, it was essential to defendants that controlling interest in Farmers State Bank be purchased. The defendants met and consummated the purchase of the stock. All the defendants were present at the closing with the exception of Wilma L. Herthel, and the defendant, Blaine H. Wiseman, acted for her at the closing.

The defendants purchased the following shares of stock of Farmers State Bank from the following sellers on January 20, 1968:

| Buyer | Amount of Stock | Seller |
|-------|-----------------|--------|
| Blaine H. Wiseman | 1 share | Patricia Pierce |
| | 1 share | Lois S. Bye |
| | 21 shares | Jean G. Stanley |
| | 39 shares | Ray B. Resch |
| James R. Davidson | 20 shares | Patricia Pierce |
| Wilma L. Herthel | 1 share | Fred H. Winterkorn |
| | 2 shares | Oscar Voelker |
| | 7 shares | Ray B. Resch |
| Conrad Renaker | 20 shares | Lois S. Bye |
| Robert W. Davis | 10 shares | Fred H. Winterkorn |
| Albert E. Crayden | 5 shares | William B. Resch |
| Helen B. Crayden | 5 shares | Estate of Fred Voelker |
| Total | 132 shares | |

On January 20, 1968, there were 250 shares of the common capital voting stock of Farmers State Bank issued and outstanding.

On or about May 2, 1968, and after the filing of the original complaint in this cause, the defendant, Blaine H. Wiseman, purchased the entire stock holdings of the other six defendants of Farmers State Bank, on advice of legal counsel in order to eliminate any suspicion of violation of Indiana law.

The quality of the oral arguments by counsel for both sides in this case are among the best it has been our privilege to hear and were most helpful.

For the effect of filing cross motions for summary judgment see *Fischer* v. *Kaylor* (1969), 145 Ind. App. 148, 250 N. E. 2d 19.

The Appellants first contention challenges the granting of summary judgment for Appellees.

In its consideration of the Appellees' Motion for Summary Judgment in this case, the trial court was obligated to consider the pleadings, affidavit and deposition in the light most favorable to the Appellants. At that point in the proceedings the trial court was not privileged to prejudge the case but must resolve all doubts in favor of the

party against whom summary judgment is sought, in this case, the Appellants. *Wozniczka* v. *McKean et al.* (1969), 144 Ind. App. 471, 247 N. E. 2d 215; *Central Realty, Inc.* v. *Hillman's Equipment, Inc.* (1969), 253 Ind. 48, 246 N. E. 2d 383; *Newcomb* v. *Cassidy* (1969), 144 Ind. App. 315, 245 N. E. 2d 846; *Walsh* v. *Fulton County Farm Bureau Co-op Assoc.* (1969), 146 Ind. App. 42, 252 N. E. 2d 609; *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 251 N. E. 2d 688.

To affirm the action of the trial court in granting Appellees' Motion for Summary Judgment we must determine if there is any issue as to a material fact and whether Appellees are entitled to judgment as a matter of law.

The provisions of the Indiana Bank Holding Company Act, Acts 1957, Ch. 165, as found in Burns' Indiana Statutes Annotated § 18-1814 *et seq.* (I.C. 28-8-2-1) are:

"SECTION 1. This Act may be cited as the 'Bank Holding Company Act' and shall have for its purpose the maintenance of competitive services between banks by prevention of the expansion of bank holding companies and similar organizations.

SEC. 2. As used in this Act the following terms shall have the following respective meanings:

(a) 'Bank' means any national banking association or any state bank, savings bank or trust company, whether organized under the laws of Indiana, the laws of another State, or the laws of the United States.

(b) 'Company' means any bank, corporation, partnership, joint-stock company, business trust, voting trust, joint venture, association or similar organization, domestic or foreign, which is doing business in Indiana, but shall not include any corporation or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, or educational purposes, no part of the net earnings of which inures of the benefit to any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda or otherwise attempting to influence legislation.

(c) 'Bank Holding Company' means any company (1) which directly or indirectly owns, controls, or holds with

power to vote, 25 per centum or more of the voting shares of each of two or more banks or of a company which is a bank holding company by virtue of this Act, or (2) which controls in any manner the election of a majority of the directors of each of two or more banks, or (3) for the benefit of whose shareholders or members, who individually or in combination having voting control of such company, 25 per centum or more of the voting shares of each of two or more banks or a bank holding company is held by trustees; and for the purposes of this Act, any successor to any such company shall be deemed to be a bank holding company from the date as of which such predecessor company became a bank holding company. Notwithstanding the foregoing, (A) no bank shall be a bank holding company by virtue of its ownership or control of shares in a fiduciary capacity, except where such shares are held for the benefit of the shareholders of such bank, (B) no company shall be a bank holding company by virtue of its ownership or control of shares acquired by it in connection with its underwriting of securities and which are held only for such period of time as will permit the sale thereof upon a reasonable basis, and (C) no company formed for the sole purpose of participation in a proxy solicitation shall be a bank holding company by virtue of its control of voting rights of shares acquired in the course of such solicitation.

(d) 'Subsidiary,' with respect to a specified bank holding company, means (1) any company 25 per centum or more of those voting shares is owned or controlled by such bank holding company; or (2) any company the election of a majority of whose directors is controlled in any manner by such bank holding company; or (3) any company 25 per centum or more of whose voting shares are held by trustees for the benefit of the shareholders or members of such bank holding company.

(e) The term 'successor' shall include any company which acquires directly or indirectly from a bank holding company shares of any bank, when and if the relationship between such company and the bank holding company is such that the transaction effects no substantial change in the control of the bank or beneficial ownership of such shares of such bank.

SEC. 3. It shall be unlawful (1) for any action to be taken hereafter which results in a company becoming a bank holding company as defined in this Act; (2) for any bank holding company hereafter to acquire direct or indirect ownership or control of any voting shares of any bank

if, after such acquisition, such company will directly or indirectly own or control more than 5 per centum of the voting shares of such bank; (3) for any bank holding company or subsidiary thereof, other than a bank, hereafter to acquire all or substantially all of the assets of a bank; or (4) for any bank holding company hereafter to merge or consolidate with any other bank holding company. Notwithstanding the foregoing, this prohibition shall not apply to (A) shares acquired by a bank, (i) in good faith in a fiduciary capacity, except where such shares are held for the benefit of the shareholders of such bank, or (ii) in the regular course of securing or collecting a debt previously contracted in good faith, but any shares acquired after the date of enactment of this Act in securing or collecting any such previously contracted debt shall be disposed of within a period of two years from the date on which they were acquired; or (B) additional shares acquired by a bank holding company in a bank in which such bank holding company owned or controlled a majority of the voting shares prior to such acquisition.

SEC. 4. Any company which wilfully violates any provisions of this Act shall, upon conviction, be fined not less than $500 nor more than $5,000 for each day during which the violation continues. Any individual who wilfully participates in a violation of any provision of this act shall, upon conviction, be fined not more than $10,000 or imprisoned not more than one year, or both."

It is readily apparent that the definition of "company" as used in the above act does not include an individual. Thus, in this case, nothing in the above act prevented Blaine H. Wiseman as an individual from acquiring 132 shares of common stock in the Farmers State Bank. This conclusion is borne out by reference to the legislative history of the Federal Bank Holding Company Act which is the model for the Indiana Bank Holding Company Act. The Senate Report on the Federal Act states:

"Under the bill, only a company as defined in the bill can become a bank holding company. Company is expressly defined to mean any corporation, business trust, association, or similar organization. It will be noted that an *individual,* as such, *is not included in this definition.*" (Emphasis added) S. Rep. N 1095 85th Cong. 1st Sess. 2488 (1956).

The Appellants assert that Blaine H. Wiseman acted through or on behalf of a "joint venture or similar organization." There is no dispute that Appellees owned more than 25% of the voting stock in the Old Capital Bank and Trust Company and between January 20, 1968 and May 2, 1968, acquired and owned more than 25% of the voting stock of Farmers State Bank.

The genuine issue as to a material fact, therefore, arises as to whether the seven Appellees constituted a "company" under the above statute. Refined further, the issue narrows, as to whether a joint venture existed among the Appellees from and after January 2, 1968, and whether this joint venture was to purchase 132 shares of voting stock in the Farmers State Bank with Blaine H. Wisemean as a "front." It is admitted that a profit motive existed for the arrangement and the Appellees had agreed among themselves as to a division of the stock acquired.

The seven Appellees filed a joint application with the Department of Financial Institutions requesting permission for them to acquire voting control of Farmers State Bank. While this action certainly is proof of good faith by the Appellees and might negative any intent to violate the Bank Holding Company Act, it does not totally negative the factual existence of a "joint venture" as contemplated in said Act.

There is also facts in the pleadings, affidavit and deposition from which a trier of fact might determine the existence of a joint venture. In *State ex rel. Uebelhor* v. *Armstrong* (1969), 252 Ind. 351, 248 N. E. 2d 32, our Supreme Court, speaking through Judge Arterburn, at 248 N. E. 2d at page 36, stated:

"A summary of the evidence most favorable to the appellee and in support of the trial court's finding shows that the appellants were acting in concert and as a group; that they bought the shares of the Bank of Ireland and divided the stock among themselves and authorized one of the appellants to pay the bills. The plan had a profit motive and

in fact was for the purpose of gaining control of the Bank of Ireland. In our opinion, this constitutes a joint venture, to say the least.

'Arrangements for buying and selling stock or bonds have been held to the joint adventures where it appeared that the transactions were to be joint and that there was to be a sharing of profits or losses.' 30 Am. Jur., Joint Adventures, § 14, p. 949.

'A joint adventure is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property and services. There is a joint enterprise where all the parties have a community of interest in the purposes and objects of the undertaking and an equal right in its control and management.' 17 I.L.E. Joint Adventures, § 1, p. 51; Baker, etc. et al. v. Billingsley et al. (1956), 136 Ind. App. 703, 132 N. E. 2d 273.

We find that a joint adventure existed in this case, and the trial court was correct in its finding in that respect.

Appellants further contend that even though the Indiana Bank Holding Company Act was violated, the appellees are private parties and therefore are not entitled to its benefits because it is criminal in nature. Appellants cite the case of Szilagyi v. State (1967), Ind., 231 N. E. 2d 221, in support of their argument. The Szilagyi case, supra, can be distinguished from the case presently before us. Szilagyi concerned whether the Administrative Adjudication and Court Review Act of 1947 (Burns' Ind. Stat. Anno. § 63-3001, et seq.) is applicable to school reorganizations under the Acts of 1959 (Burns' Ind. Stat. Anno. 1966 Cum. Supp. § 28-6101, et seq.). The court in that case held that appellants could not rely on all alleged violations of the Hughes Anti-Secrecy Act (Burns' Ind. Stat. Anno. § 57-601, et seq.) because the Act was criminal in nature and afforded no advantage to appellants. The purpose of the Hughes Anti-Secrecy Act is 'that all of the citizens of this State are, unless otherwise expressly provided by law, at all times entitled to full and complete information regarding the affairs of government and the official acts of * * * public officials and employees.' (Burns' § 57-601) The appellants in the Szilagyi case, supra, could show no peculiar harm caused to them by violation of the Hughes Anti-Secrecy Act as compared to the harm suffered by the citizens of the state as a whole.

In the present case, unlike Szilagyi v. State, supra, the appellees can show a peculiar harm which they will suffer if the Indiana Bank Holding Company Act is violated. The violation or non-violation of the Act in itself is determinative of the case. We think this aspect of the present case is controlled by the holding of Markley v. Murphy (1913), 180 Ind. 4, 102 N. E. 376, 47 L.R.A., N.S., 689. That case allowed plaintiff to allege the violation of a statute which prohibited the assignment of a debt to a person outside the state for the purpose of attachment or garnishment, although the statute provided as a sanction only a fine. The following paragraph was quoted with approval from Cooley, Torts 7:

'When the act or neglect which constitutes a public wrong is especially and peculiarly injurious to an individual, and obstructs him in the enjoyment of some right which the law has undertaken to assure, the offender may be subject to a double liability; he may be punished by the State and he may be compelled to remunerate the individual.'

This Court therefore holds that since a violation of the Indiana Bank Holding Company Act would inflict a particular harm on appellees as directors of the Bank of Ireland, they were entitled to raise the violation of the Act as a defense to appellants' quo warranto proceeding. This Court cannot stamp with approval a violation of a criminal act which results in direct injuries to the parties involved in litigation. The old doctrine that a party may not in a court of equity have 'unclean hands' and still seek relief, is certainly applicable where a violation of the criminal law is involved.

Since this is a criminal act and should be strictly construed, the appellants contend that the Indiana Bank Holding Company Act is unconstitutional because of indefiniteness when it states that it shall be unlawful for any group to acquire 'directly or indirectly' ownership of 25% or more of the voting shares of another bank. We feel the word 'indirectly' here has a common, well-known meaning in this statute, i.e., shares held by the real owner in the name of a third party. Our observation is that this is a word in common usage and has a well-known meaning. The appellants cite no case in point in support of their contention. On the other hand, the case of Hightower v. Detroit Edison Co. (1933), 262 Mich. 1, 247 N. W. 97, 86 A. L. R. 509, directly supports the appellees' position. We do not find that

the appellants have made out a case of unconstitutionality as to the statute.

Appellants next urge that the scope of the relief granted by the trial court is excessive in that it orders a divesting of the majority control which the appellants acquired over the Bank of Ireland. The appellees make out a case irreparable injury unless this controlling interest is divested. Equity has such power.

'Courts of general jurisdiction in Indiana have power to grant equitable relief, not only under statutes, but inherently, as necessary to the complete administration of justice.' 12 I.L.E., Equity, § 3, p. 268; Roberts v. Leutzke (1906), 39 Ind. App. 577, 78 N. E. 635; Albrecht et al. v. C.C. Foster Lumber Company (1890), 126 Ind. 318, 26 N. E. 157.

We find no lack of jurisdiction of the trial court in this case with reference to the method and means to force a divesting of the controlling interest of the appellants, which was illegally acquired. The order that the stock shall not be sold for less than the average price of $35.00 is a protection for the appellants, with which they have no right to complain. It is an attempted preventative against the appellants' stock interests being sacrificed at a loss to them. Peoples Savings Bank v. Stoddard (1960), 359 Mich. 297, 102 N. W. 2d 777, 83 A. L. R. 2d 344; Schine Chain Theatres v. United States (1948), 334 U. S. 110, 68 S. Ct. 947, 92 L. Ed. 1245."

See also, *Kroll* v. *Smith* (1957), 127 Ind. App. 178, 139 N. E. 2d 573.

While the factual record in this case does not present as clear and persuasive case of violation of the Bank Holding Company Act as *Uebelhor* v. *Armstrong,* there is sufficient evidence to permit the trier of fact to determine that Appellees acted in concert and as a group, that they purchased 132 shares of stock in Farmers State Bank, divided the stock among themselves and authorized one of the Appellees to act for them.

One might even infer the existence of a joint venture from the *Statement of Facts* in the Appellees' Brief.

Also, it is apparent that Appellees' Argument as set forth in their brief is framed in terms of weight and credibility of

evidence. We have said in many cases that such questions cannot be resolved by summary judgment. See *Mayhew* v. *Deister* (1969), 144 Ind. App. 111, 244 N. E. 2d 448.

We must emphasize that it is for the trier of fact to determine, on the merits, whether the stock of the Farmers State Bank was, in fact, purchased by the Appellees acting as and through a joint venture. As we see the factual record in this case, this question could be decided either way. Thus, the question must be submitted to a trier of fact for decision on the merits, after a trial. It is important, even in a civil case tried by a judge alone, that questions of fact be decided by the truth-seeking processes of a trial on the merits.

If there was, in fact, a violation of the Bank Holding Company Act, the subsequent purchase of all the shares by Blaine H. Wiseman from the other Appellees would not, in itself, as a matter of law, obviate any violation of the Act. To so hold, would set up a ready made device to pervert the obvious intent of the Bank Holding Company Act. Under the *Uebelhor* v. *Armstrong* case, when there is a violation of the Indiana Bank Holding Company Act, the trial court has the jurisdiction and inherent equitable power to grant relief, including injunctive relief, notwithstanding events which follow such violation.

We do not agree with the Appellants that they are entitled to a judgment as a matter of law and that summary judgment should have been granted to them. Our reasons for this conclusion are implicit in what we have said and need not be repeated here.

For the foregoing reasons, the decision of the trial court in granting Appellees' Motion for Summary Judgment should be and hereby is reversed and this case is remanded for a trial on the merits.

Hoffman, C.J. and Staton, J., concur; White, J., not participating.

NOTE.—Reported in 269 N. E. 2d 12.