David L. PETERSON,
Plaintiff-Appellant,

v.

The CULVER EDUCATIONAL FOUN-
DATION and Ben A. Barone,
Defendants-Appellees.

No. 3-1179A309.

Court of Appeals of Indiana,
First District.

March 18, 1980.

Rehearing Denied April 22, 1980.

**450**

Richard D. Boyle, Boyle, Atlas, Hyatt & Reuben, Indianapolis, Eugene N. Chipman, Chipman, Morrison & Humphrey, Plymouth, for plaintiff-appellant.

Roland Obenchain, Don G. Blackmond, Jones, Obenchain, Johnson, Ford, Pankow & Lewis, South Bend, for defendants-appellees.

NEAL, Judge.

Originally, Col. Ben A. Barone, individually and as superintendent of Culver Military Academy, and the Culver Educational Foundation of Culver, appealed in Cause No. 3–777–A–160 from a judgment of the Kosciusko Circuit Court upon a jury verdict for $12,495 [1] in favor of David L. Peterson in his action for wrongful discharge against defendants Barone, et al.[2] Also, plaintiff Peterson appealed in Cause No. 3–1179–A–309 from a summary judgment granted by the Marshall Circuit Court in favor of defendants Barone and the Culver Educational Foundation in a defamation action brought by plaintiff Peterson. This court, on its own motion, consolidated the two appeals for decision and opinion.

The issues raised for our review are as follows:

---

1. Although the jury did not so specify, the parties agree the verdict was for $2,495 in compensatory damages and $10,000 in punitive damages.

2. The parties do not raise the fact that defendant Barone was not a party to the contract. He did not even sign the contract as agent for Culver. We can think of no theory under these facts of how he can be bound individually for breach of contract.

I. Is there sufficient evidence to support the judgment that defendants wrongfully discharged plaintiff and is such judgment contrary to law?

II. Is there sufficient evidence to support the judgment for punitive damages against defendants and is such judgment contrary to law?

III. Is plaintiff barred by the doctrine of res judicata from pursuing his defamation action?

The judgment of the Kosciusko Circuit Court is affirmed in part and reversed in part. The judgment of the Marshall Circuit Court is reversed.

## ISSUE I

The parties stipulated at trial to certain facts as follows: Plaintiff Peterson had a contract of employment with Culver Educational Foundation as a senior instructor from September 1, 1974, until June 30, 1975. He was suspended from that position by defendant Barone on May 16, 1975, and discharged the following day. The amount of $2,495 represented wages due under the contract if it were determined that the plaintiff was entitled to compensatory damages.

Plaintiff's action for wrongful discharge resulted in a jury verdict in his favor.

The parties agree that a contract of employment for a definite term containing, as here, no provisions with respect to termination, may be terminated before the expiration of the term by mutual agreement or for cause. *Seco Chemicals, Inc., Division of Stan Sax Corporation v. Stewart,* (1976) Ind.App., 349 N.E.2d 733; *Rochester Capital Leasing Corporation v. McCracken,* (1973) 156 Ind.App. 128, 295 N.E.2d 375. Defendants, however, incorrectly rely on *School City of Crawfordsville v. Montgomery,* (1933) 99 Ind.App. 526, 187 N.E. 57, for the proposition that defendant Barone's decision to dismiss the plaintiff is not reviewable except for bad faith, corruption, fraud or gross abuse of discretion. That rule is limited to situations where power has been conferred upon an adminis-

trative officer or board, either by statute or by contract, to remove a teacher for cause, and such is not the case here.

Inasmuch as the plaintiff did not agree to his dismissal, we must inquire into the evidence as to whether his dismissal was justified by a cause for discharge.

78 C.J.S. *Schools and School Districts* § 8 (1952) says, at 617–18:

"Contracts between private schools and teachers or other instructors are governed, in general, by the rules applicable to other contracts of employment . . . Teachers in private schools occupy merely contractual positions as employees in relation to the trustees and the school board, and they undertake, in the absence of a special contract, to exercise reasonable skill and judgment, and ordinary care and diligence, in rendering their services.

\* \* \* \* \* \*

. . . A teacher may be dismissed for any just cause, or for any improper conduct or behavior likely to be hurtful or injurious to the standing or reputation of the school or to interfere with the progress, training, or discipline of its pupils . . . The right to remove or discharge a teacher for any neglect of duty or improper conduct does not justify his removal on grounds merely of expediency or convenience." (Footnotes omitted.)

*Seco Chemicals Inc., Division of Stan Sax Corporation, supra,* quoted 53 Am.Jur.2d *Master and Servant* § 51 (1970) in 349 N.E.2d at 738–739 as follows:

"Without doubt an employee, although engaged for a definite term of service, may be dismissed because of inefficiency, unskilfulness, neglect, or carelessness. The law implies a stipulation or undertaking by an employee in entering into a contract of employment that he is competent to perform the work undertaken and is possessed of the requisite skill and knowledge to enable him to do so, and that he will do the work of the employer in a careful manner. If he is not qualified to do the work which he undertakes,

if he is incompetent, unskilful or inefficient, or if he executes his work in a negligent manner or is otherwise guilty of neglect of duty, he may lawfully be discharged before the expiration of his term of employment. . . .

The degree of skill, care, diligence, and attention imposed by the implied possession of competency, knowledge, skilfulness, etc., on the part of one entering into a contract of employment is that of ordinary and reasonable skill, care, and diligence; he cannot be discharged on the ground of incompetency, negligence, etc., merely because he fails to employ the highest degree of skilfulness and care known in the trade, unless the contract of employment expressly stipulates for such degree of skill and care, or unless the employee represents that he possesses such."

The *Seco Chemicals* court emphasized that an employer's right to discharge can be based on material matters but not on trivialities.

Defendants argue that the evidence will not support a jury finding that the plaintiff was discharged without cause. They contend he was discharged for cause because of: 1) hugged, kissed, and touched a female student, discussed sex and drug problems with her, and made suggestive statements to her; 2) encouraged a second female student to cheat on a chemistry quiz, discussed sex with her and offered her contraceptives, hugged her, and made suggestive statements to her; and 3) countermanded instructions given by male student officers to an underclassman and made derogatory remarks about these student officers and one other male student.

In *Rochester Capital Leasing Corporation, supra,* this court said, 295 N.E.2d at 378:

"[T]he question of whether an alleged act occurred is a question of fact for the jury. Where the facts are undisputed, the evidence may be such as to justify discharge as a matter of law. However, where the facts, even though undisputed, are such that reasonable men might differ as to whether the alleged misconduct is so inconsistent with the employer-employee relationship as to justify discharge, the question is one of fact for the jury."

■ This court is limited to an examination of that evidence and the reasonable inferences drawn therefrom which support the verdict in determining if sufficient evidence of probative value exists. When the evidence is in conflict and reasonable minds can differ on an issue or reach different conclusions, we are bound by the jury's findings. *City of Indianapolis, Department of Metropolitan Development v. Heeter,* (1976) Ind.App., 355 N.E.2d 429.

The evidence most favorable to the jury's finding that the plaintiff was wrongfully discharged is the testimony of the plaintiff himself in which he directly contradicted much of the testimony offered against him and offered different interpretations of occurrences upon which other testimony was based.

The plaintiff said that he considered counseling students about their personal and scholastic problems a part of being a good teacher, and that he so counseled at least 30 students each school year, about one-fourth of them girls. As a part of this effort, he testified that he did discuss sex and drugs with these students, and with one particular student who lodged charges against him with the school and who testified against him at trial, that he did inquire as to her virginity in an attempt to discover what specifically was troubling her, that he did express his love of her in the sense that he loved her as he loved mankind in general, and that he encouraged her to come to him for help with her problems. He said that she had confided in him her use of amphetamines and that he did not report this to school authorities because it was told to him in confidence. He insisted that he had never kissed the girl or made advances toward her, and that he had never offered contraceptives or drugs to any student.

Plaintiff testified that he never countermanded the commands of student officers, criticized them in an improper manner, or made derogatory remarks about them. He

said that while assigned to supervise a barracks as barracks inspector he did make suggestions to troop leaders. He also told of one incident involving three student officers which resulted in his reporting them to school authorities for showing disrespect to a faculty member. He testified that the students apologized to him and he withdrew his report. He did admit that he had, on occasion, used a derogatory nickname for one particular student whom he in fact liked, but that he had ceased this prior to its being reported to defendant Barone because he had come to realize it was in bad taste.

■■■ Where the evidence is in conflict, we cannot weigh the evidence, assess relative credibilities of witnesses, nor substitute our judgment or conclusions for those of the trier of fact. *American Fletcher National Bank and Trust Company v. Flick*, (1969) 146 Ind.App. 122, 252 N.E.2d 839. The jury heard the above-summarized testimony of the plaintiff as well as the testimony of others. The jury weighed the evidence and assessed the demeanor and credibility of the witnesses and determined that the conduct of the plaintiff did not justify his discharge. We cannot say, as a matter of law, that the evidence is insufficient to support such a determination.

## ISSUE II

Defendants raise several challenges to the award of punitive damages. We reverse the award on the basis of insufficiency of the evidence and thus need not address the related allegations of error.

In *First Federal Savings and Loan Association of Indianapolis v. Mudgett*, (1979) Ind.App., 397 N.E.2d 1002, 1004–1008, this court reviewed the relevant Indiana law as follows:

"The law which governs the award of punitive damages in contract actions was definitively set out by our Supreme Court in *Vernon Fire & Casualty Ins. Co. v. Sharp*, (1976) 264 Ind. 599, 349 N.E.2d 173, 179–81, and bears repeating here:

'The general rule, recognized in Indiana, *Hibschman Pontiac, Inc. v. Batchelor* (1976), Ind.App., 340 N.E.2d 377; *Standard Land Corp. v. Bogardus* (1972), 154 Ind.App. 283, 289 N.E.2d 803, and throughout the United States, 11 Williston on Contracts § 1340 (W. Jaeger, 3d ed.1968), is that punitive damages are not recoverable in contract actions. In most contract situations, the rule is a fair one, considering the nature of the interest to be protected. As Dean Prosser notes:

"Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties *manifesting consent*, and are owed only to the specific individuals named in the contract. Even as to these individuals, the damages recoverable for a breach of the contract duty are limited to those reasonably within the contemplation of the defendant when the contract was made, while in a tort action a much broader measure of damages is applied." Prosser, Law of Torts, 613 (4th ed.1971).

The well-defined parameters of compensatory and consequential damages which may be assessed against a promisor who decides for whatever reason not to live up to his bargain lend a needed measure of stability and predictability to the free enterprise system. Thus, a promisor's motive for breaching his contract is generally regarded as irrelevant, *Pirchio v. Noecker* (1948), 226 Ind. 622, 82 N.E.2d 838, because the promisee will be compensated for all damages proximately resulting from the promisor's breach, *Cincinnati & Chi Air Line R. R. v. Rodgers* (1865), 24 Ind. 103. Where the facts surrounding the promisor's breach indicate sub-standard business conduct, the promisee may also enjoy a limited sense of requital in taking his business elsewhere in the future, but he is not entitled to mulct the promisor in punitive damages.

The general rule is not ironclad. Exceptions have developed where the conduct of the breaching party not only amounts to a breach of the contract, but also *independently* establishes the elements of a common-law tort such as

fraud. *Murphy Auto Sales, Inc. v. Coomer* (1953), 123 Ind.App. 709, 112 N.E.2d 589. The requirement that an *independent* tort be found serves several purposes. First, it maintains the symmetry of the general rule of not allowing punitive damages in contract actions, because the punitive damages are awarded for the *tort*, not on the contract. Secondly, the independent tort requirement facilitates judicial review of the evidence by limiting the scope of review to a search for the elements of the tort. Neither of these functions of the independence requirement is very compelling when it appears from the evidence as a whole that a serious wrong, tortious in nature, has been committed, but the wrong does not conveniently fit the confines of a pre-determined tort. The foregoing circumstances alone, however, will not sustain the award of punitive damages. *It must also appear that the public interest will be served by the deterrent effect punitive damages will have upon future conduct of the wrongdoer and parties similarly situated.* Only when these factors coalesce, will the independent tort requirement be abrogated, and the allowance of punitive damages be sustained. A careful review of the case law in this area leads to the conclusion expressed herein, that an independent tort need not always be established, and the same conclusion is reached in Corbin's treatise:

> "It can be laid down as a general rule that punitive damages are not recoverable for breach of contract, although in certain classes of cases, there has been a tendency to instruct the jury that they may award damages in excess of compensation and by way of punishment. These cases, however, are cases that contain elements that enable the court to regard them as falling within the field of tort *or as closely analogous thereto.*" . . . [Emphasis added, footnotes omitted].

The standard for awarding punitive damages is necessarily a flexible one. Indiana case law follows Sedgwick's formulation which appears in *Taber v. Hutson* (1854), 5 Ind. 322, 324:

> "[W]henever the elements of fraud, malice, gross negligence or oppression *mingle* in the controversy, the law, instead of adhering to the system or even the language of compensation, adopts a wholly different rule. It permits the injury to give what it terms punitory, vindictive, or exemplary damages; in other words, it blends together the interest of society and of the aggrieved individual, and gives damages not only to recompense the suffer [sic], but to punish the offender." [Emphasis added.]

Sedgwick's recognition that the lines between contract and tort often become blurred is aptly demonstrated by his choice of the word "mingle" in describing the presence of tortious activity which accompanies the breach of contract. This formulation clearly recognizes that an independent tort is not a prerequisite to the recovery of punitive damages, and we adhere to this standard as a wise one.' (Original emphasis.)

Without question, to allow punitive damages in addition to compensatory damages in a contract action is to follow the exception and not the general rule. This exception is restricted to those instances in which the evidence: (1) independently establishes the elements of a common law tort, or (2) shows that a serious wrong, tortious in nature, has been committed in an instance in which the public interest would be served by the deterrent effect punitive damages would have upon the future conduct of the wrongdoer and parties similarly situated.

An award of punitive damages in a contract action is based on findings which place stress on the defendant's state of mind. 'The Expanding Availability of Punitive Damages in Contract Actions,' 8 Indiana Law Review 668 (1975).

Under the first basis of recovery under *Vernon, supra,* there must be evidence to support a finding that the defendant committed an intentional tort independent of the breach of contract. . . .

Under the second basis of recovery under *Vernon, supra*, there must be evidence of 'fraud, malice, gross negligence or oppression' mingled in the controversy.

Fraud is defined as:

'The intentional deception, relied upon by another which induces him to part with property or surrender a legal right. . .'
*Guy v. Schuldt*, (1956) 236 Ind. 101, 138 N.E.2d 891.

or as:

'A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, [trick], cunning, dissembling, and any unfair way by which another is cheated.' Black's Law Dictionary 788 (rev. 4th ed. 1968).

Malice is:

'The intentional doing of a wrongful act without just cause or excuse with an intent to inflict an injury or under circumstances that the law will imply an evil intent.' Black's Law Dictionary 1109 (rev. 4th ed. 1968).

Oppression is defined in *Vernon, supra*, 349 N.E. at 184, as:

'An act of cruelty, severity, unlawful exaction, or excessive use of authority.'

Gross negligence is equated with fraud, malice and oppression in *Prudential Ins. Co. v. Executive Estates*, (1977) Ind.App., 369 N.E.2d 1117, [1131], where Judge Buchanan also discussed at great length the allegation of 'heedless or reckless disregard of the consequences,' . . . [:]

'That a heedless or reckless disregard of consequences will support punitive damages is recognized in principle more than actuality . . . the phrase being enumerated along with other descriptive terms in cases dealing with more oppressive behavior of the wrongdoer. See, e. g., *Nicholson's Mobile Home Sales, Inc. v. Schramm* (1975), 164 Ind.App. 598, 330 N.E.2d 785; *Lou Leventhal Auto Co., Inc. v. Munns, supra*.

The phrase also appears to be used as an alternative to the description of more oppressive conduct. *Harness v. Steele* (1902), 159 Ind. 286, 64 N.E. 875; *Citizens' Street R. R. v. Willoeby* (1893), 134 Ind. 563, 33 N.E. 627.

When specific conduct has been characterized as a heedless or reckless disregard of consequences, the conduct would appear to be more accurately characterized as a conscious and intentional wrongdoing better described by such words as oppression or malice. In *Bob Anderson Pontiac, Inc. v. Davidson* (1973), 155 Ind. App. 395, 400, 293 N.E.2d 232, 235, the facts centered on consumer fraud (altered automobile odometer and misrepresented condition) which the court also characterized as a "negligent or wilful misrepresentation of a material fact inducing the entry into a contract." *Capitol Dodge, Inc. v. Haley* (1972), 154 Ind.App. 1, 288 N.E.2d 766 likewise dealt with consumer fraud—inducing a sale by promising nonexistent insurance coverage.

In two cases in which the court spoke *only* of a heedless disregard of consequences, a more conscious and direct type of behavior was nevertheless included. The wrongdoer in *True Temper Corp. v. Moore* (1973), 157 Ind.App. 142, 299 N.E.2d 844, bought and cut standing timber from a seller known not to own the land. The wrongdoer's conduct in *Jones v. Hernandez* (1970), 148 Ind.App. 17, 263 N.E.2d 759, was just as direct and conscious . . . charging an electric fence with 110 volts to keep neighboring farm laborers away.

So it seems reasonable to conclude that something more than a state of mind described as heedless disregard of the consequences is required to justify imposition of punitive damages. The cases seem to have dealt with a state of mind demonstrating actual malice or a wantonness from which the law could imply malice. None in Indiana have [sic] yet gone so far as to support or award punitive damages solely on the basis of a concept of heedless disregard of the consequences, which might also be described as constructive malice.

Prudential's conduct, measured by any of these standards, falls short of constituting an independent tort of such a reprehensible nature as to justify imposition of punitive damages.

\* \* \* \* \* \*

However, our inquiry does not cease with the determination that Prudential's conduct does not evidence an independent tort of a reprehensible nature. We must also ask whether "elements of fraud, malice, gross negligence or oppression mingle" with the breach of the contractual promises made by Prudential so as to support an award of punitive damages. See *Hibschman Pontiac, Inc. v. Batchelor* (1977), Ind., 362 N.E.2d 845; *Vernon Fire & Cas. Ins. Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173; *Joseph Schlitz Brewing Co. v. Central Beverage Co., Inc.*, Ind.App., 359 N.E.2d 566; *Jones v. Abriani* (1976), Ind.App., 350 N.E.2d 635. An analysis of these cases forces the conclusion that the "tortious conduct" involved is indicative of a state of mind evidencing bad faith: auto dealer avoiding repairs until warrant period expired (*Hibschman*); insurer refusing to pay claimant as means of forcing a third party settlement (*Vernon*); brewer terminating agreement with liquor wholesaler in violation of statute (*Joseph Schlitz Brewing Co.*); seller refusing to return deposit upon buyer's rejection of defective mobile home (*Jones*).

Again, Prudential's behavior by any fair appraisal falls short of "fraud, malice, gross negligence, or oppression." Gross negligence as such, used in this context, has not been defined, but it is reasonable to assume that it refers to the same kind of oppressive conduct symbolized by fraud or malice. See 25 C.J.S. *Damages* § 123(8), at p. 1147 (1966).' (Footnotes omitted, our emphasis.)

We also deem it useful to quote extensively from the thoughtful concurrence of Judge Garrard in *Hibschman Pontiac, Inc. v. Batchelor* (1976), Ind.App., 340 N.E.2d 377, transfer granted by the Supreme Court in *Hibschman Pontiac, Inc. v. Batchelor* (1977), Ind., 362 N.E.2d 845, in an opinion that disagreed with the Court of Appeals' application of the law to the facts but not with its summary of relevant law.

Judge Garrard said, in 340 N.E.2d at 384–385:

'An examination of prior Indiana decisions as to when punitive damages may be awarded leads to two conclusions.

First, while the decisions refer to such descriptive terms as malice, gross fraud, oppressive conduct, wantonness, heedless disregard of the consequences, insult, violence, abuse and outrageous conduct, this language is intended as *descriptive* rather than *definitive*.

Not only do the terms recited vary somewhat from case to case, they are sometimes used conjunctively (*See, Murphy Auto Sales, Inc. v. Coomer, supra*), and sometimes disjunctively. (*See, Jeffersonville Silgas, Inc. v. Wilson* (1972), 154 Ind.App. 398, 290 N.E.2d 113.) This is emphasized in *Wheatcraft v. Myers* (1914), 57 Ind.App. 371, 378, 107 N.E. 81, and again in *Murphy Auto Sales, supra*, where the courts stated,

" . . . [W]here malice, fraud, oppression, etc. entered into a tort, exemplary damages may be assessed." (Emphasis added)

Secondly, at the core of these descriptions is a consideration of the quality of the actor's conduct that characterizes it as reprehensible. It embodies a consciousness of intended or probable effect calculated to unlawfully injure the personal safety or property rights of others. In some instances it may consist of the conscious desire to maximize rather than mitigate the amount of injury suffered.

If one were to select a single word or term to describe this essence, it would be "malice." To warrant punitive damages the tort complained of must be committed maliciously. The malice may be actual or constructive. Actual malice may be express or implied.

Malice may be implied from commission of the tort in a violent, abusive, insulting or oppressive manner.

Constructive malice exists where the act or conduct is performed in such a reckless or wanton manner that the law will imply malice from the nature of the conduct and the actor's heedless disregard of the consequences and the rights of others.' (Footnotes omitted, original emphasis.)

Courts have long recognized that a good faith dispute as to what a contract requires of a party will never supply the grounds for punitive damages, *Jones v. Abriani* (1976), Ind.App., 350 N.E.2d 635; that the legitimate exercise of the 'right to disagree' may directly result in intentional infliction of temporal damage; but that the infliction of such damage is generally regarded as privileged, *Vernon, supra.* Courts must be careful not to discourage honest litigation by allowing punitive damages against a party who is merely exercising his right to adjudicate an honest dispute even if he is found to be in error and even if his litigation injures the other party. 8 Ind.Law Review 668, *supra.* In *Vernon, supra*, we also stressed that a promisor's motive for breaching his contract is generally irrelevant and that even a breach indicating substandard business conduct does not entitle the promisee to mulct the promisor in punitive damages.

On the other hand, as Judges Buchanan and Garrard have emphasized, punitive damages are appropriate where there is evidence of an independent tort of a 'reprehensible' nature, where the record indicates a state of mind evidencing bad faith, or where the actor's conduct has a quality that characterizes it as 'reprehensible' as where there is evidence of a consciousness of an intended or probable effect calculated to unlawfully injure the personal safety or property rights of others. *Hibschman Pontiac, supra; Vernon, supra.* Such conduct is not privileged."

In his brief to this court, the plaintiff has not specifically pointed out evidence which could sustain a finding of either an independent tort or a serious wrong tortious in nature, and our extensive review of the record fails to reveal any such evidence.

Defendant Barone received a complaint from a 16-year-old female student at the academy concerning the plaintiff's behavior toward her, which complaint encompassed conversations concerning sex, her personal life, hugging and kissing her, etc. Defendant Barone conducted an investigation which included acquiring written statements from the girl, discussing the problem with the girl's parents, soliciting advice from the academy's attorney, and discussing the matter with certain faculty and staff members and with the plaintiff. Plaintiff denied any such conduct but did admit conversations with the girl relative to sex and her personal life, but insisted that the conversations were had in the course of counseling the girl. Plaintiff was not a certified counselor nor was counseling a part of his duties at the academy. At the conclusion of the investigation defendant Barone was of the opinion that the matter was a one-on-one standoff and dropped the matter. Thereafter he offered the plaintiff a new contract for the following year.

Subsequently, before the new contract with the plaintiff was executed, defendant Barone received a similar complaint about the plaintiff from another female student, and yet another complaint lodged by student officers. At that time, the parents of the first complainant pressed him with other information concerning the plaintiff and their daughter. Defendant Barone conducted further investigations, taking written statements, discussing the matter with affected students' parents, and causing a polygraph test to be administered to the first complainant, which she passed. At this juncture defendant Barone decided to, and did, withdraw the contract he had tendered to the plaintiff and dismissed him.

After the dismissal of the plaintiff, defendant Barone placed a notice on the bulletin board stating that the plaintiff had been discharged, but the notice did not enumerate any reasons. He further advised the faculty and staff members who had been involved in the investigations of his actions in that regard.

It is significant that the evidence does not disclose, nor does the plaintiff contend, that any of this unfortunate drama originated in the mind of defendant Barone or any representative of Culver. Defendant Barone reacted to complaints made by students. We are of the opinion that defendant Barone, as chief executive officer of the coeducational institution, when confronted with charges of improprieties such as these on the part of a faculty member, had every right, and a duty, to make an investigation of the circumstances. If true, conduct of that nature would be intolerable and dismissal justified. Further, defendant Barone had a right to make a decision based upon the investigation. In deciding whether to believe the students or the plaintiff, defendant Barone, in the exercise of his judgment, came to a conclusion opposite to the conclusion reached by the jury. If the trier made a finding of an erroneous conclusion on the part of defendant Barone, coupled with a finding of freedom of fault on the part of the plaintiff, such findings would certainly justify a verdict that Culver breached its contract, which we have concluded above. In a breach of contract suit, absent a prayer for punitive damages, the defendant's state of mind is not relevant.

Nevertheless, when we move from the subject of breach of contract to the subject of punitive damages, the focus of the analysis shifts. The subject of punitive damages is concerned with the defendant's state of mind. Intentional conduct is involved. The descriptive words sifted from the cases describing conduct for which punitive damages may be awarded in contract actions include fraud, malice, gross negligence, oppression, intentional infliction of injury, cruelty, severity, excessive use of authority, false suggestions, suppression of truth, trick, cunning, evil intent, and bad faith. Our enumeration is not intended to be exhaustive. We find nothing in the record of defendant Barone's reaction to the complaints lodged with him which could be characterized by those terms.

We do not think that defamation, as an independent tort, was ever pleaded, litigated, or proven, as set forth fully in the discussion on res judicata below. If it were, the plaintiff's second suit for defamation would be precluded.

## ISSUE III

In reviewing the granting by the Marshall Circuit Court of the defendants' motion for summary judgment on the plaintiff's defamation action, we bear in mind the following: The grant of summary judgment to the defendants or any party is proper only in those circumstances in which no genuine issue as to any material fact exists. Ind.Rules of Procedure, Trial Rule 56(C). If any doubt is present respecting the existence of a material issue of fact, summary judgment may not be granted. *Richards v. Goerg Boat and Motors, Inc.*, (1979) Ind.App., 384 N.E.2d 1084; *Tabani v. Hester*, (1977) Ind.App., 366 N.E.2d 193; *McGinnis v. Public Service Company of Indiana, Inc.*, (1974) 161 Ind.App. 1, 313 N.E.2d 708; *Kochert v. Wiseman*, (1971) 148 Ind.App. 613, 269 N.E.2d 12.

It is the burden of the moving party to establish that no material issue of fact exists. *Podgorny v. Great Central Insurance Co.*, (1974) 160 Ind.App. 244, 311 N.E.2d 640; *Linden Packing Co., Inc. v. Heinold Hog Market, Inc.*, (1973) 156 Ind. App. 37, 294 N.E.2d 848. If any doubt respecting the existence of material factual issues is present, such doubt must be determined against the moving party. *Kline v. Kramer*, (1979) Ind.App., 386 N.E.2d 982; *Randolph v. Wolff*, (1978) Ind.App., 374 N.E.2d 533; *Surratt v. Petrol, Inc.*, (1974) 160 Ind.App. 479, 312 N.E.2d 487; *Linden Packing Co., supra.*

The history of the two cases involved in this litigation is as follows: On May 23, 1975, plaintiff Peterson filed a complaint against defendants Culver and Barone alleging in substance his employment as a teacher at Culver; that he was slandered by the superintendent, defendant Barone; that his contract as a teacher was terminated, all to his damage. Defendants Culver and Barone filed their answers to his com-

plaint in denial, and further set forth as special defenses that any statements allegedly made by defendant Barone were privileged communications, and that the statements were true.

Thereafter, on December 19, 1975, the plaintiff filed Paragraph II to his complaint in which he alleged that he was employed under contract by Culver in 1973, and continued his employment until May 16, 1976, on which date he was wrongfully discharged without a hearing in violation of rule 2.97E of the North Central Association of Colleges and Schools, of which Culver was a member. Rule 2.97E provided substantially that in the event dismissal or nonrenewal of a contract was contemplated, the employee would be informed in writing of the reasons and he would be granted a hearing before action was taken. Plaintiff Peterson further alleged that the actions of defendants Culver and Barone were sufficiently malicious, oppressive, reckless and/or intentional to entitle him to punitive damages. The defendants thereafter filed their answers to Paragraph II in denial.

A pretrial conference was held on July 28, 1976, and the pretrial order, which controls the subsequent course of the litigation, reflects that the sole issue to be tried was the issue raised in Paragraph II of the complaint. The pretrial order further recites that Paragraph I, the defamation count, was dismissed, with no mention of objection by Culver or defendant Barone, and the record does not disclose that the dismissal was with prejudice.

Trial was commenced on February 7, 1977, before a jury, and resulted in the single verdict for the plaintiff in the sum of $12,495. The verdict and judgment rendered thereon were general.

Thereafter, on May 13, 1977, plaintiff Peterson filed his complaint in the instant case for defamation, alleging that he had been defamed as a result of certain statements made by defendant Barone in the course of his investigation of the plaintiff's conduct which led to the termination of his contract. Defendants Culver and Barone filed their motion for summary judgment bottomed on the proposition that insomuch as the basic fact situation for the wrongful discharge action and the defamation action was the same, judgment in the former suit was res judicata and a bar to the latter suit for defamation. They argue in support of the summary judgment that all of the allegedly defamatory statements were made by defendant Barone on May 16, 1975, on the day that he terminated the plaintiff's employment, and in Barone's recital of the reasons for termination. They contend that the gravamen of both actions is the same, that is, defendants Barone and Culver wrongfully discharged the plaintiff and that the reasons given for the discharge were defamatory. Therefore, the claims of defamation and wrongful discharge arose out of the same set of circumstances, provable by the same evidence, and truth was a defense to both claims. They further argue that if what defendant Barone said were true, it was not defamatory and the discharge was for good cause. The defendants insist that claims like these, arising out of the same set of circumstances, cannot be tried piecemeal, that the issue of defamation could have been tried in the wrongful discharge action, and that it is therefore barred under res judicata.

Plaintiff Peterson contends that a former judgment, even between the same parties, will act as a bar to a subsequent action only as to those matters which were within the issues of the previous case. He argues that since the pretrial order in the former action specified only those issues that were contractual in nature, and the defamation count in the former case was dismissed, the defamation action was not a matter within the issues of the former action. He contends, therefore, that he is not estopped from bringing the latter action for defamation since there was no identity of causes of action, issues, or proofs required in the original action, contractual in nature, as opposed to the subsequent defamation action, *ex delicto* in nature.

Examination of the Indiana rules of procedure relative to joinder of claims discloses that joinder is permissive, not

mandatory. T.R. 18(A) states the following:

"A party asserting a claim for relief as an original claim . . . *may join*, either as independent or as alternate claims, as many claims, whether legal, equitable, or statutory as he has against the opposing party." (Emphasis added.)

The Civil Code Study Commission comments state that "this rule does not make joinder mandatory but is permissive in its operation." 2 W. Harvey, Indiana Practice § 18.2, at 237 (1970), recites that "no right is lost by failure to join." The result is apparent when T.R. 13(A), regarding compulsory counterclaims, is examined. In the case of *Middelkamp v. Hanewich,* (1977) Ind.App., 364 N.E.2d 1024, the court stated that T.R. 13(A) was closely allied to res judicata, and if a compulsory counterclaim is not filed it is barred. No such language exists in T.R. 18, and we therefore conclude that no bar was intended for failure to join claims in an original action.

██ The next question to be resolved is whether the original inclusion, and dismissal, of a defamation count in the former action is of relevance. T.R. 41(A)(1) and (2) provide that a dismissal is without prejudice unless so stated in the notice of dismissal or the order of dismissal. Neither Culver nor defendant Barone objected to the dismissal of the defamation count in the former action, and the record is silent as to its conclusiveness. The dismissal of the defamation count in the former action then is without prejudice and does not form a basis for res judicata. *See* 50 C.J.S. *Judgments* § 729 (1947).

██ If the ruling on the summary judgment is to be sustained upon any theory, it must be sustained upon common law res judicata. The basic elements of res judicata are fourfold: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the matter now in issue was, or might have been, determined in the former suit; 3) the particular controversy adjudicated in the former action must have been between the parties to the present suit or their privies; and 4) the

judgment in the former suit must have been rendered on the merits. *Middelkamp, supra.*

In the case of *Town of Flora v. Indiana Service Corporation,* (1944) 222 Ind. 253, 256–258, 53 N.E.2d 161, the court in its discussion of res judicata distinguished the two branches of res judicata:

"It is necessary that we have, on the outset, a clear understanding of the principles of law upon which appellees rest their case. There are two well defined branches of the rule of *res judicata.* The subject has often been confused by the loose use of descriptive terms. One branch of the subject deals with prior adjudication as a bar. Under it a cause of action finally determined between the parties on the merits by a court of competent jurisdiction, cannot again be litigated by new proceedings before the same or any other tribunal, except by way of review according to law. Such a judgment or decree so rendered is a complete bar to any subsequent action on the same claim or cause of action, between the same parties, or those in privity with them. Every question which was within the issues, and which, under the issues, might have been proved, will be presumed to have been proved and adjudicated. *Jordan v. Sisson* (1924), 82 Ind.App. 128, 141 N.E. 881. This rule is perhaps best described as 'estoppel by judgment.'

The other branch of the subject applies where the causes of action are not the same, but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the former adjudication of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the latter suit, regardless of the identity of the causes of action, or the lack of it, in the two suits. When the second action between the same parties is on a different cause of action, claim, or demand, it is well settled that the judgment in the first suit operates as an es-

toppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined. In such cases the inquiry must always be as to the point or question actually litigated and determined in the original action. This branch of the subject may appropriately be described as 'estoppel by verdict or finding.' See *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 186 N.E. 152, 88 A.L.R. 563 (Ann. on p. 574).

In this connection it should be further observed that where a judgment may have been based upon either or any of two or more distinct facts, a party desiring to plead the judgment as an estoppel by verdict or finding upon the particular fact involved in a subsequent suit must show that it went upon that fact, or else the question will be open to a new contention. The estoppel of a judgment is only presumptively conclusive, when it appears that the judgment could not have been rendered without deciding the particular matter brought into question, it is necessary to look to the complete record to ascertain what was the question in issue."

The later case of *Middelkamp, supra,* follows *Town of Flora, supra,* and recites the following in 364 N.E.2d at 1033:

"Under this doctrine, a judgment precludes a second action founded upon the same or a substantially identical cause of action. Actions are identical if identical evidence will support the issues tendered in both. (Citations omitted.) Even if the second action is on a different claim or demand, the prior judgment acts as an estoppel, *but only as to matters in issue actually controverted and actually determined in the prior action.* (Citations omitted.)" (Emphasis added.)

See also *South Bend Federation of Teachers v. National Education Association—South Bend,* (1979) Ind.App., 389 N.E.2d 23.

The case of *Mayhew, Huston v. Deister,* (1969) 144 Ind.App. 111, 244 N.E.2d 448, adds the following at 121, 244 N.E.2d at 453:

"*Any issue necessarily decided* in such [prior] litigation is conclusively determined as to the parties or their privies if it is involved in a later lawsuit on a different cause of action." (Emphasis added.)

 50 C.J.S. *Judgments* §§ 712–734 (1947) contains a discussion which illuminates the holdings in the Indiana authorities cited above. If a judgment itself does not show what matters were decided, the pleadings, evidence, instructions, and verdict may be examined to determine that fact. Findings not essential to or material to the judgment do not effect res judicata. 50 C.J.S. § 712. The estoppel of a judgment does not extend to matters not expressly adjudicated and which can be inferred only by argument, except where there are necessary and inevitable inferences, in the sense that the judgment could not have been rendered as it was without deciding such points. There is no estoppel where anything is left to conjecture as to what was necessarily involved and decided, as where the judgment, which might have been based upon one of several grounds, does not show upon which ground it was based. 50 C.J.S. § 717. The limitation on the res judicata rule is that a judgment is conclusive only as to those facts which were necessary to sustain the judgment, and does not conclude matters which were incidental to or collateral to the decision in the case. 50 C.J.S. §§ 722 and 725.

 In the application of the above rules to the facts in these causes, we must further proceed to an examination of the necessary issues involved in actions which are contractual in nature and actions which are for defamation. The basic elements of the former action contractual in nature, are: 1) existence of a contract; 2) the breach thereof by the defendants; and 3) damages. 6 I.L.E. *Contracts* §§ 257 and 237 (1958). In defamation actions, the issues are normally: 1) a defamatory imputation; 2) malice; 3) publication; and 4) damages. Further issues in defense are: 5) privileged communication, absolute or qualified; and 6) truth. 18 I.L.E. *Libel and Slander* §§ 21–51 (1959).

In the former case the verdict and judgment were general. Res judicata extends only to issues expressly adjudicated or adjudicated by necessary inference, and we may not conjecture as to the basis of the judgment. The issues in the former case bear no relation to the issues in the defamation action except that they grow out of the same general situation and background. The entire record of the former trial is before us and there is nothing in it to indicate upon what basis the jury made its decision. There is not disclosed any necessary and inevitable inference from which it could be said that the jury must have determined the former case upon the issue of defamation in reaching its decision.

Malice is the only element common to the former suit for punitive damages and the latter suit for defamation. However, the jury, in order to arrive at a punitive damage verdict, would not as a necessary and inevitable inference make the award on the basis of malice, as other theoretical bases appear.

 Defendants Culver and Barone contend that the law is that all matters which could have been litigated in the former suit will be concluded if the second suit is on the same cause of action and between the same parties, and cite the following cases in support thereof: *State ex rel. Bradshaw v. Probate Court of Marion County,* (1947) 225 Ind. 268, 73 N.E.2d 769; *Roby v. Eggers,* (1891) 130 Ind. 415, 29 N.E.

365; *Cutler v. Cox,* (1828) 2 Blackf. 178; *Middelkamp, supra;* and *Raley v. Evansville Gas & Electric Light Co.,* (1910) 45 Ind.App. 649, 90 N.E. 783. As a broad proposition of law they are correct. The rule, however, is limited to matters which were in issue between the parties, or which might have been completely adjudicated within the issues framed, and the mere fact that a question might have been litigated under additional pleadings does not make it res judicata if it is not embraced within the scope of the suit. 17 I.L.E. *Judgments* § 380 (1959); 50 C.J.S. *Judgments* § 716 (1947); *Hine v. Wright,* (1941) 110 Ind.App. 385, 36 N.E.2d 972. In our opinion, the defamation suit was not within the issues framed in the wrongful discharge suit.

For the reasons stated above, the summary judgment granted the appellees is reversed.

The judgment of the Kosciusko Circuit Court is affirmed in part and reversed in part. The judgment of the Marshall Circuit Court is reversed.

ROBERTSON, P. J., and RATLIFF, J., concur.